(Slip Opinion) OCTOBER TERM, 2020 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## PEREIDA *v.* WILKINSON, ACTING ATTORNEY GENERAL

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 19–438.　Argued October 14, 2020—Decided March 4, 2021

Immigration officials initiated removal proceedings against Clemente Avelino Pereida for entering and remaining in the country unlawfully, a charge Mr. Pereida did not contest. Mr. Pereida sought instead to establish his eligibility for cancellation of removal, a discretionary form of relief under the Immigration and Nationality Act (INA). 8 U. S. C. §§1229a(c)(4), 1229b(b)(1). Eligibility requires certain nonpermanent residents to prove, among other things, that they have not been convicted of specified criminal offenses. §1229b(b)(1)(C). While his proceedings were pending, Mr. Pereida was convicted of a crime under Nebraska state law. See Neb. Rev. Stat. §28–608 (2008). Analyzing whether Mr. Pereida's conviction constituted a "crime involving moral turpitude" that would bar his eligibility for cancellation of removal, §§1182(a)(2)(A)(i)(I), 1227(a)(2)(A)(i), the immigration judge found that the Nebraska statute stated several separate crimes, some of which involved moral turpitude and one—carrying on a business without a required license—which did not. Because Nebraska had charged Mr. Pereida with using a fraudulent social security card to obtain employment, the immigration judge concluded that Mr. Pereida's conviction was likely not for the crime of operating an unlicensed business, and thus the conviction likely constituted a crime involving moral turpitude. The Board of Immigration Appeals and the Eighth Circuit concluded that the record did not establish which crime Mr. Pereida stood convicted of violating. But because Mr. Pereida bore the burden of proving his eligibility for cancellation of removal, the ambiguity in the record meant he had not carried that burden and he was thus ineligible for discretionary relief.

*Held*: Under the INA, certain nonpermanent residents seeking to cancel

a lawful removal order bear the burden of showing they have not been convicted of a disqualifying offense. An alien has not carried that burden when the record shows he has been convicted under a statute listing multiple offenses, some of which are disqualifying, and the record is ambiguous as to which crime formed the basis of his conviction. Pp. 5–17.

(a) The INA squarely places the burden of proof on the alien to prove eligibility for relief from removal. §1229a(c)(4)(A). Mr. Pereida accepts his burden to prove three of four statutory eligibility requirements but claims a different rule should apply to the final requirement at issue here—whether he was convicted of a disqualifying offense. Mr. Pereida identifies nothing in the statutory text that singles out that lone requirement for special treatment. The plain reading of the text is confirmed by the context of three nearby provisions. First, the INA specifies particular forms of evidence that "shall constitute proof of a criminal conviction" in "any proceeding under this chapter," regardless of whether the proceedings involve efforts by the government to remove an alien or efforts by the alien to establish eligibility for relief. §1229a(c)(3)(B). Next, Congress knows how to impose the burden on the government to show that an alien has committed a crime of moral turpitude, see §§1229a(c)(3), 1227(a)(2)(A)(i), and yet it chose to flip the burden when it comes to applications for relief from removal. Finally, the INA often requires an alien seeking admission to show "clearly and beyond doubt" that he is "entitled to be admitted and is not inadmissible," §1229a(c)(2), which in turn requires the alien to demonstrate that he has not committed a crime involving moral turpitude, §1182(a)(2)(A)(i)(I). Mr. Pereida offers no account why a rational Congress would have placed this burden on an alien who is seeking admission, but lift it from an alien who has entered the country illegally and faces a lawful removal order. Pp. 5–7.

(b) Even so, Mr. Pereida contends that he can carry the burden of showing his crime did not involve moral turpitude using the so-called "categorical approach." Applying the categorical approach, a court considers not the facts of an individual's conduct, but rather whether the offense of conviction necessarily or categorically triggers a consequence under federal law. Under Mr. Pereida's view, because a person could hypothetically violate the Nebraska statute without committing fraud—*i.e.*, by carrying on a business without a license—the statute does not qualify as a crime of moral turpitude. But application of the categorical approach implicates two inquiries—one factual (what was Mr. Pereida's crime of conviction?), the other hypothetical (could someone commit that crime of conviction without fraud?). And the Nebraska statute is divisible, setting forth multiple crimes, some of which the parties agree are crimes of moral turpitude. In cases involving

Syllabus

divisible statutes, the Court has told judges to determine which of the offenses an individual committed by employing a "modified" categorical approach, "review[ing] the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction." *Mathis* v. *United States*, 579 U. S. \_\_\_, \_\_\_. This determination, like many issues surrounding the who, what, when, and where of a prior conviction, involves questions of historical fact. The party who bears the burden of proving these facts bears the risks associated with failing to do so. This point is confirmed by the INA's terms and the logic undergirding them. A different conclusion would disregard many precedents. See, *e.g., Taylor* v. *United States,* 495 U. S. 575, 600. Just as evidentiary gaps work against the government in criminal cases where it bears the burden, see, *e.g., Johnson* v. *United States,* 559 U. S. 133, they work against the alien seeking relief from a lawful removal order. Congress can, and has, allocated the burden differently. Pp. 7–15.

   (c) It is not this Court's place to choose among competing policy arguments. Congress was entitled to conclude that uncertainty about an alien's prior conviction should not redound to his benefit. And Mr. Pereida fails to acknowledge some of the tools Congress seemingly did afford aliens faced with record-keeping challenges. See, *e.g.,* §1229a(c)(3)(B). Pp. 15–17.

916 F. 3d 1128, affirmed.

GORSUCH, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, ALITO, and KAVANAUGH, JJ., joined. BREYER, J., filed a dissenting opinion, in which SOTOMAYOR and KAGAN, JJ., joined. BARRETT, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order that
corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 19–438

———————

## CLEMENTE AVELINO PEREIDA, PETITIONER *v.* ROBERT M. WILKINSON, ACTING ATTORNEY GENERAL

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[March 4, 2021]

JUSTICE GORSUCH delivered the opinion of the Court.

Everyone agrees that Clemente Avelino Pereida entered this country unlawfully, and that the government has se-cured a lawful order directing his removal. The only re-maining question is whether Mr. Pereida can prove his eli-gibility for discretionary relief.

Under the Immigration and Nationality Act (INA), indi-viduals seeking relief from a lawful removal order shoulder a heavy burden. Among other things, those in Mr. Pereida's shoes must prove that they have not been convicted of a "crime involving moral turpitude." Here, Mr. Pereida ad-mits he has a recent conviction, but declines to identify the crime. As a result, Mr. Pereida contends, no one can be sure whether his crime involved "moral turpitude" and, thanks to this ambiguity, he remains eligible for relief.

Like the Eighth Circuit, we must reject Mr. Pereida's ar-gument. The INA expressly requires individuals seeking relief from lawful removal orders to prove all aspects of their eligibility. That includes proving they do not stand convicted of a disqualifying criminal offense.

# I

The INA governs how persons are admitted to, and removed from, the United States. Removal proceedings begin when the government files a charge against an individual, and they occur before a hearing officer at the Department of Justice, someone the agency refers to as an immigration judge. If the proof warrants it, an immigration judge may order an individual removed for, say, entering the country unlawfully or committing a serious crime while here. See 8 U. S. C. §§1229a, 1182(a), 1227(a).

Even then, however, an avenue for relief remains. A person faced with a lawful removal order may still ask the Attorney General to "cancel" that order. §§1229a(c)(4), 1229b(b)(1). To be eligible for this form of relief, a nonpermanent resident alien like Mr. Pereida must prove four things: (1) he has been present in the United States for at least 10 years; (2) he has been a person of good moral character; (3) he has not been convicted of certain criminal offenses; and (4) his removal would impose an "exceptional and extremely unusual" hardship on a close relative who is either a citizen or permanent resident of this country. §§1229b(b)(1), 1229a(c)(4). Establishing all this still yields no guarantees; it only renders an alien *eligible* to have his removal order cancelled. The Attorney General may choose to grant or withhold that relief in his discretion, limited by Congress's command that no more than 4,000 removal orders may be cancelled each year. §1229b(e).

This narrow pathway to relief proved especially challenging here. The government brought removal proceedings against Mr. Pereida, alleging that he had entered the country unlawfully and had never become a lawful resident. In reply, Mr. Pereida chose not to dispute that he was subject to removal. Instead, he sought to establish only his eligibility for discretionary relief. At the same time, Mr. Pereida's lawyer explained to the immigration judge that Nebraska authorities were in the middle of prosecuting his client for

a crime. Because the outcome of that case had the potential to affect Mr. Pereida's eligibility for cancellation of removal, counsel asked the immigration judge to postpone any further proceedings on Mr. Pereida's application for relief until the criminal case concluded. The immigration judge agreed.

In the criminal case, state authorities charged Mr. Pereida with attempted criminal impersonation. Under Nebraska law, a person commits criminal impersonation if he:

> "(a) Assumes a false identity and does an act in his or her assumed character with intent to gain a pecuniary benefit . . . or to deceive or harm another;
>
> "(b) Pretends to be a representative of some person or organization and does an act in his or her pretended capacity with the intent to gain a pecuniary benefit . . . and to deceive or harm another;
>
> "(c) Carries on any profession, business, or any other occupation without a license, certificate, or other authorization required by law; or
>
> "(d) Without the authorization . . . of another and with the intent to deceive or harm another: (i) Obtains or records . . . personal identifying information; and (ii) Accesses or attempts to access the financial resources of another through the use of . . . personal identifying information for the purpose of obtaining credit, money . . . or any other thing of value." Neb. Rev. Stat. §28–608 (2008) (since amended and moved to Neb. Rev. Stat. §28–638).

Ultimately, Mr. Pereida was found guilty, and this conviction loomed large when his immigration proceedings resumed. Before the immigration judge, everyone accepted that Mr. Pereida's eligibility for discretionary relief depended on whether he could show he had not been convicted

of certain crimes, including ones "involving moral turpitude." 8 U. S. C. §§1182(a)(2)(A)(i)(I), 1227(a)(2)(A)(i), 1229b(b)(1)(C). And whatever else one might say about that phrase, the parties took it as given that a crime involving "fraud [as] an ingredient" qualifies as a crime involving "moral turpitude." *Jordan* v. *De George*, 341 U. S. 223, 227 (1951).

The parties' common ground left Mr. Pereida with an uphill climb. As the immigration judge read the Nebraska statute, subsections (a), (b), and (d) each stated a crime involving fraud, and thus each constituted a disqualifying offense of moral turpitude. That left only subsection (c)'s prohibition against carrying on a business without a required license. The immigration judge thought this crime likely did not require fraudulent conduct, but he also saw little reason to think it was the offense Mr. Pereida had committed. The government presented a copy of the criminal complaint against Mr. Pereida showing that Nebraska had charged him with using a fraudulent social security card to obtain employment. Meanwhile, Mr. Pereida declined to offer any competing evidence of his own. In light of this state of proof, the immigration judge found that Mr. Pereida's conviction had nothing to do with carrying on an unlicensed business in violation of subsection (c) and everything to do with the fraudulent (and thus disqualifying) conduct made criminal by subsections (a), (b), or (d).

Mr. Pereida's efforts to undo this ruling proved unsuccessful. Both the Board of Immigration Appeals (BIA) and the Eighth Circuit agreed with the immigration judge that Nebraska's statute contains different subsections describing different crimes. *Pereida* v. *Barr*, 916 F. 3d 1128, 1131, 1133 (2019). They agreed, too, that subsections (a), (b), and (d) set forth crimes involving moral turpitude, while subsection (c) does not. At the same time, both found the case a little more complicated than the immigration judge thought. While the government's evidence revealed that

Nebraska had *charged* Mr. Pereida with using a fraudulent social security card to obtain employment, and while that evidence would "seem to support a finding that the crime underlying [Mr. Pereida's] attempt offense involved fraud or deceit," the BIA and Court of Appeals observed that nothing in the record definitively indicated which statutory subsection Mr. Pereida stood *convicted* of violating. App. to Pet. for Cert. 17a. Still, neither the agency nor the Eighth Circuit could see how the absence of conclusive proof on this score might make a difference. Mr. Pereida bore the burden of proving his eligibility for relief, so it was up to him to show that his crime of conviction did not involve moral turpitude. Because Mr. Pereida had not carried that burden, he was ineligible for discretionary relief all the same.

It is this judgment Mr. Pereida asks us to reverse. In his view, Congress meant for any ambiguity about an alien's prior convictions to work against the government, not the alien. The circuits have disagreed on this question, so we granted certiorari to resolve the conflict. 589 U. S. \_\_\_ (2019).

## II
## A

Like any other, Mr. Pereida's claims about Congress's meaning or purpose must be measured against the language it adopted. And there, a shortcoming quickly emerges. The INA states that "[a]n alien applying for relief or protection from removal has the burden of proof to establish" that he "satisfies the applicable eligibility requirements" and that he "merits a favorable exercise of discretion." 8 U. S. C. §1229a(c)(4)(A). To carry that burden, a nonpermanent resident alien like Mr. Pereida must prove four things, including that he "has not been convicted" of certain disqualifying offenses, like crimes involving moral turpitude. §1229b(b)(1)(C). Thus any lingering uncertainty about whether Mr. Pereida stands convicted of a crime of

moral turpitude would appear enough to defeat his applica-
tion for relief, exactly as the BIA and Eighth Circuit held.

It turns out that Mr. Pereida actually agrees with much
of this. He accepts that he must prove three of the four
statutory eligibility requirements (his longstanding pres-
ence in the country, his good moral character, and extreme
hardship on a relative). He does not dispute that ambiguity
on these points can defeat his application for relief. It is
*only* when it comes to the final remaining eligibility re-
quirement at issue here—whether he was convicted of a dis-
qualifying offense—that Mr. Pereida insists a different rule
should apply. Yet, he identifies nothing in the statutory
text singling out this lone requirement for special treat-
ment. His concession that an alien must show his good
moral character undercuts his argument too. Ambiguity
about a conviction for a crime involving moral turpitude
would seem to defeat an assertion of "good moral charac-
ter." Cf. 8 U. S. C. §1101(f)(3). And if that's true, it's hard
to see how the same ambiguity could *help* an alien when it
comes to the closely related eligibility requirement at issue
before us.

What the statute's text indicates, its context confirms.
Consider three nearby provisions. First, the INA specifies
particular forms of evidence that "shall constitute proof of
a criminal conviction," including certain official records of
conviction, docket entries, and attestations.
§1229a(c)(3)(B). These rules apply to "any proceeding un-
der this chapter" regardless whether the proceedings hap-
pen to involve efforts by the government to remove an alien
or efforts by an alien to obtain relief. *Ibid.* In this way, the
INA anticipates both the need for proof about prior convic-
tions and the fact an alien sometimes bears the burden of
supplying it.

Next, when it comes to "removal proceedings," the INA
assigns the government the "burden" of showing that the
alien has committed a crime of moral turpitude in certain

circumstances.  See §§1229a(c)(3), 1227(a)(2)(A)(i).  But the burden flips for "[a]pplications for relief from removal," like the one at issue in this case.  §1229a(c)(4).  These statutory features show that Congress knows how to assign the government the burden of proving a disqualifying conviction. And Congress's decision to do so in some proceedings, but not in proceedings on an alien's application for relief, reflects its choice that these different processes warrant different treatment.

Finally, the INA often requires an alien applying for admission to show "clearly and beyond doubt" that he is "entitled to be admitted and is not inadmissible." §1229a(c)(2)(A).  As part of this showing, an alien must demonstrate that he has not committed a crime involving moral turpitude.  §1182(a)(2)(A)(i)(I).  In this context, it is undisputed that an alien has the burden of proving that he has not committed a crime of moral turpitude.  And Mr. Pereida has offered no account why a rational Congress might wish to place this burden on an alien seeking admission to this country, yet lift it from an alien who has entered the country illegally and is petitioning for relief from a lawful removal order.[1]

### B

Confronted now with a growing list of unhelpful textual clues, Mr. Pereida seeks to shift ground.  Even if he must shoulder the burden of proving that he was not convicted of a crime involving moral turpitude, Mr. Pereida replies, he can carry that burden thanks to the so-called "categorical approach."

The Court first discussed the categorical approach in the criminal context, but it has since migrated into our INA cases.  Following its strictures, a court does not consider the

---

[1] The dissent does not seriously dispute any of this, but brushes it aside as having "little or n[o]" importance only because of the "categorical approach" discussed in the next section.  *Post,* at 1 (opinion of BREYER, J.).

facts of an individual's crime as he actually committed it.
Instead, a court asks only whether an individual's crime of
conviction necessarily—or categorically—triggers a partic-
ular consequence under federal law.  The categorical ap-
proach is required, we have said, because the language
found in statutes like the INA provision before us don't task
courts with examining whether an individual's *actions* meet
a federal standard like "moral turpitude," but only whether
the individual "has. . . been convicted of an *offense*" that
does    so.      §§1229b(b)(1)(C)    (emphasis    added),
1227(a)(2)(A)(i); *Taylor* v. *United States*, 495 U. S. 575, 600
(1990); *Leocal* v. *Ashcroft*, 543 U. S. 1, 7 (2004); *United
States* v. *Davis*, 588 U. S. ___, ___–___ (2019) (slip op., at 9–
11).[2]

In Mr. Pereida's view, the categorical approach makes all
the difference.  It does so because Nebraska's statute crim-
inalizes at least some conduct—like carrying on a business
without a license—that doesn't necessarily involve fraud.
So what if Mr. Pereida *actually* committed fraud?  Under
the categorical approach, that is beside the point.  Because
a person, hypothetically, *could* violate the Nebraska statute
without committing fraud, the statute does not qualify as a
crime involving moral turpitude.  In this way, Mr. Pereida
submits, he can carry any burden of proof the INA assigns
him.

This argument, however, overstates the categorical ap-
proach's preference for hypothetical facts over real ones.  In
order to tackle the *hypothetical* question whether one might
complete Mr. Pereida's offense of conviction without doing
something fraudulent, a court must have some idea what

—————

[2] Nothing requires Congress to employ the categorical approach.  In-
stead of focusing our attention on the question whether an offense of con-
viction meets certain criteria, Congress could have (and sometimes has)
used statutory language requiring courts to ask whether the defendant's
actual conduct meets certain specified criteria.  See, *e.g.*, *Nijhawan* v.
*Holder*, 557 U. S. 29, 41 (2009).

his *actual* offense of conviction was in the first place. And to answer that question, courts must examine historical facts. No amount of staring at a State's criminal code will answer whether a particular person was convicted of any particular offense at any particular time. Applying the categorical approach thus implicates two inquiries—one factual (what was Mr. Pereida's crime of conviction?), the other hypothetical (could someone commit that crime of conviction without fraud?).[3]

The factual inquiry can take on special prominence when it comes to "divisible" statutes. Some statutes state only a single crime, often making it a simple thing for a judge to conclude from a defendant's criminal records that he was convicted of violating statute x and thus necessarily convicted of crime x. Not infrequently, however, a single criminal statute will list multiple, stand-alone offenses, some of which trigger consequences under federal law, and others of which do not. To determine exactly which offense in a divisible statute an individual committed, this Court has told judges to employ a "modified" categorical approach, "review[ing] the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction." *Mathis* v. *United States*, 579 U. S. ___, ___, ___ (2016) (slip op., at 12, 16). In aid of the inquiry, we have said, judges may consult "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.*, at ___ (slip op., at 4).

These nuances expose the difficulty with Mr. Pereida's

————————

[3] It is unclear where the dissent stands on this point. In places, the dissent seems to suggest that no "threshold" factual question exists here. *Post,* at 10. Elsewhere, the dissent appears to admit that establishing the "basic fact" of an individual's crime of conviction is a necessary prerequisite to application of the categorical approach. *Post*, at 11. The second view comes closer to the mark.

argument. Both he and the government accept that Ne-
braska's attempted criminal impersonation statute is di-
visible because it states no fewer than four separate of-
fenses in subsections (a) through (d). The immigration
judge, BIA, and Eighth Circuit concluded that three of these
subsections—(a), (b), and (d)—constitute crimes of moral
turpitude. So that left Mr. Pereida with the burden of prov-
ing as a factual matter that *his* conviction was for misusing
a business license under subsection (c). To be sure, in this
Court Mr. Pereida now seeks to suggest that it is also pos-
sible for a hypothetical defendant to violate subsection (a)
without engaging in conduct that involves moral turpitude
under federal law. But even assuming he is right about
this, it still left him obliged to show in the proceedings be-
low that he was convicted under subsection (a) or (c) rather
than under (b) or (d).

Mr. Pereida failed to carry that burden. Before the im-
migration judge, he refused to produce any evidence about
his crime of conviction even after the government intro-
duced evidence suggesting that he was convicted under a
statute setting forth some crimes involving fraud. Nor has
Mr. Pereida sought a remand for another chance to resolve
the ambiguity by introducing evidence about his crime of
conviction; at oral argument, he even disclaimed interest in
the possibility. See Tr. of Oral Arg. 23–25. These choices
may be the product of sound strategy, especially if further
evidence would serve only to show that Mr. Pereida's crime
of conviction *did* involve fraud. But whatever degree of am-
biguity remains about the nature of Mr. Pereida's convic-
tion, and whatever the reason for it, one thing remains
stubbornly evident: He has not carried his burden of show-
ing that he was not convicted of a crime involving moral
turpitude.

Look at the problem this way. Mr. Pereida is right that,
when asking whether a state conviction triggers a federal

consequence, courts applying the categorical approach often presume that a conviction rests on nothing more than the minimum conduct required to secure a conviction. But Mr. Pereida neglects to acknowledge that this presumption cannot answer the question *which* crime the defendant was convicted of committing. To answer that question, parties and judges must consult evidence. And where, as here, the alien bears the burden of proof and was convicted under a divisible statute containing some crimes that qualify as crimes of moral turpitude, the alien must prove that his actual, historical offense of conviction isn't among them.[4]

The INA's plain terms confirm the point. Recall that the INA places the "burden of proof" on an alien like Mr. Pereida to show four things; that one of these is the absence of a disqualifying conviction; and that the law specifies certain forms of evidence "shall" constitute "proof" of a criminal conviction. See Part II–A, *supra.* In each of these ways, the statutory scheme anticipates the need for evidentiary proof about the alien's crime of conviction and imposes on the alien the duty to present it.[5]

———————

[4] The dissent makes the same mistake. At first, it acknowledges that courts must look to factual evidence to determine which of several offenses in a divisible statute the defendant committed, and even admits we do not know which of the offenses listed in the Nebraska statute Mr. Pereida committed. *Post,* at 5, 9. But the dissent then does an about-face—treating Nebraska's (divisible) statute as if it states a single offense. *Post*, at 10. The dissent had it right the first time. Both sides *agree* that Nebraska's statute is divisible and states (at least) four independent crimes. We do not know which of those crimes formed the basis of Mr. Pereida's conviction because the record is ambiguous, and Mr. Pereida has not supplied anything to clarify it. Mr. Pereida now attempts to benefit from that uncertainty. But *that* proposition is foreclosed by the INA's burden of proof.

[5] There are other statutory signals that point to the same conclusion. The INA authorizes an immigration judge to make "credibility determination[s]" based on an alien's proof, §1229a(c)(4)(C); it says the immigration judge must determine whether "testimony is credible, is persuasive, and refers to specific facts sufficient to [discharge] the applicant's burden

The INA adopts this approach for understandable rea-
sons too. Not only is it impossible to discern an individual's
offense of conviction without consulting at least some docu-
mentary or testimonial evidence. It's easy to imagine sig-
nificant factual disputes that make these statutory instruc-
tions about the presentation of evidence and the burden of
proof critically important. Suppose, for example, that the
parties in this case disputed whether the criminal com-
plaint the government introduced involved a *different*
Clemente Avelino Pereida. Alternatively, what if Ne-
braska's complaint charged Mr. Pereida with a violation of
subsection (c) but the plea colloquy mentioned only subsec-
tion (d)? Or what if the relevant records were illegible or
contained a material typo? Courts can resolve disputes like
these only by reference to evidence, which means a statu-
tory allocation of the burden of proof will sometimes matter
a great deal.

To reach a different conclusion would require us to cast a
blind eye over a good many precedents. When applying the
categorical approach, this Court has long acknowledged
that to ask what crime the defendant was convicted of com-
mitting is to ask a question of fact. See, *e.g.*, *Taylor*, 495
U. S., at 600 (courts look "to the fact that the defendant had
been convicted of crimes falling within certain categories").

---

of proof," §1229a(c)(4)(B); and the law requires the alien to comply with
regulations requiring him to "submit information or documentation" sup-
porting his application for relief, *ibid*. Current regulations indicate that
an alien should describe on his application form any prior convictions he
may have, Dept. of Justice, Executive Office for Immigration Review,
Form EOIR–42B, Application for Cancellation of Removal and Adjust-
ment of Status for Certain Nonpermanent Residents 5 (Rev. July 2016),
https://www.justice.gov/sites/default/files/pages/attachments/2016/10/
20/eoir42b.pdf. In all of these additional ways, the INA again anticipates
the need for proof and the possibility of its challenge in an application for
relief—and nowhere does the statute suggest some special carveout ex-
ists when it comes to evidence concerning prior convictions.

We have described the modified categorical approach as re-
quiring courts to "review . . . record materials" to determine
which of the offenses in a divisible statute the defendant
was convicted of committing. *Mathis*, 579 U. S., at ___ (slip
op., at 16). We have acknowledged that this process calls
on courts to consider "extra-statutory materials" to "dis-
cover" the defendant's crime of conviction. *Descamps* v.
*United States*, 570 U. S. 254, 263 (2013). We have observed
that these "materials will not in every case speak plainly,"
and that any lingering ambiguity about them can mean the
government will fail to carry its burden of proof in a crimi-
nal case. *Mathis*, 579 U. S., at ___ (slip op., at 18) (citing
*Shepard* v. *United States*, 544 U. S. 13, 21 (2005)). And we
have remarked that "the fact of a prior conviction" supplies
an unusual and "arguable" exception to the Sixth Amend-
ment rule in criminal cases that "any fact that increases the
penalty for a crime" must be proved to a jury rather than a
judge. *Apprendi* v. *New Jersey*, 530 U. S. 466, 489, 490
(2000).

Really, this Court has never doubted that the who, what,
when, and where of a conviction—and the very existence of
a conviction in the first place—pose questions of fact. Nor
have we questioned that, like any other fact, the party who
bears the burden of proving these facts bears the risks as-
sociated with failing to do so.[6]

───────────

[6] Practice in the criminal and INA contexts comports with practice in
other fields too. Often in civil litigation, a party must prove the fact of a
prior judgment on a particular claim or the fact of a ruling on a particular
issue. And there, as here, the question can turn on the persuasiveness
of the proof presented and on whom the burden of proof rests. So, for
example, the Restatement (Second) of Judgments, contemplates that
parties seeking to assert issue preclusion "ha[ve] the burden of proving"
that an "an issue of fact or law" has been "actually litigated and deter-
mined by a valid and final judgment." §27, and Comment *f* (1982). And
"[i]f it cannot be determined from the pleadings and other materials of
record in the prior action what issues, if any, were litigated and deter-
mined by the verdict and judgment, extrinsic evidence is admissible to

The authorities Mr. Pereida invokes do not teach differently. He directs our attention especially to *Moncrieffe* v. *Holder*, 569 U. S. 184 (2013), *Carachuri-Rosendo* v. *Holder*, 560 U. S. 563 (2010), and *Johnson* v. *United States*, 559 U. S. 133 (2010). But the first two cases addressed only the question whether the minimum conduct needed to commit an alien's *known* offense of conviction categorically triggered adverse federal consequences. Neither addressed the threshold factual question at issue here—*which* crime formed the basis of the alien's prior conviction.

The final case is no more helpful to Mr. Pereida. *Johnson* involved a criminal prosecution under the Armed Career Criminal Act (ACCA) in which the government bore the burden of proof. There, "nothing in the record" indicated which of several crimes in a divisible statute the defendant had been convicted of committing. *Id.,* at 137. Accordingly, if it wished to win certain sentencing enhancements, the government had to show that *all* of the statute's offenses met the federal definition of a "'violent felony.'" *Ibid.* Here, by contrast, Mr. Pereida bears the burden of proof and the same logic applies to him. We do not doubt that, when the record is silent on which of several crimes in a divisible statute an alien committed, he might succeed by showing that

———————

aid in such determination. Extrinsic evidence may also be admitted to show that the record in the prior action does not accurately indicate what issues, if any, were litigated and determined." *Id.,* Comment *f.*

The dissent suggests its own analogy to contract law. See *post,* at 10–11. But it never explains why we should look there before the statutory text or the law's customary treatment of judgments. Nor does the analogy succeed even on its own terms. It is "generally a question of fact for the jury whether or not a contract . . . actually exists." 11 R. Lord, Williston on Contracts §30:3, pp. 37–39 (4th ed. 2012). So too, "[w]hen a written contract is ambiguous, its meaning is a question of fact," which may require looking to "relevant extrinsic evidence." *Id.*, §30:7, at 116, 124. Similarly here, disputes about the existence of Mr. Pereida's conviction and its ambiguous meaning involve at least some questions of fact requiring resort to proof.

*none* of the statute's offenses qualifies as a crime of moral turpitude. It's simply that this avenue wasn't open to Mr. Pereida. No one before us questions that Nebraska's statute contains *some* crimes of moral turpitude under federal law. Given this, it necessarily fell to Mr. Pereida to show that his actual offense was not among these disqualifying offenses. And just as evidentiary gaps work against the government in criminal cases, they work against the alien seeking relief from a lawful removal order. When it comes to civil immigration proceedings, Congress can, and has, allocated the burden differently.[7]

## C

This leaves Mr. Pereida to his final redoubt. Maybe the INA works as we have described. But, Mr. Pereida worries, acknowledging as much would invite "grave practical difficulties." Brief for Petitioner 43. What if the alien's record of conviction is unavailable or incomplete through no fault of his own? To deny aliens relief only because of poor state court record-keeping practices would, he submits, make for inefficient and unfair public policy. The dissent expands on these same policy arguments at length. See *post,* at 14–16.

Notably, though, neither Mr. Pereida nor the dissent suggests that record-keeping problems attend *this* case. Mr. Pereida's immigration proceedings progressed in tandem with his criminal case, so it is hard to imagine how he could have been on better notice about the need to obtain and preserve relevant state court records about his crime. Represented by counsel in both proceedings, he had professional help with these tasks too. We know that relevant records

---

[7] The dissent asserts that the ACCA and INA have a "shared text and purpose." *Post,* at 14. In fact, however, the ACCA and INA provision at issue here bear different instructions. Both may call for the application of the categorical approach. But while the ACCA's categorical approach demands certainty from the government, the INA's demands it from the alien. See *post*, at 6.

were created, as well, because the government submitted documents outlining the charges brought against him. Despite all this, Mr. Pereida simply declined to insist on clarity in his state court records or supply further evidence.

Still, even accepting that graver record-keeping problems will arise in *other* cases, it is not clear what that might tell us. Record-keeping problems promise to occur from time to time regardless who bears the burden of proof. And, as in most cases that come our way, both sides can offer strong policy arguments to support their positions. Mr. Pereida and the dissent say fairness and efficiency would be better served if the government bore the risk of loss associated with record-keeping difficulties. Meanwhile, the government contends that it is important for the burden of proof to rest with the alien so those seeking discretionary relief cannot gain a tactical advantage by withholding or concealing evidence they possess about their own convictions. It is hardly this Court's place to pick and choose among competing policy arguments like these along the way to selecting whatever outcome seems to us most congenial, efficient, or fair. Our license to interpret statutes does not include the power to engage in such freewheeling judicial policymaking. Congress was entitled to conclude that uncertainty about an alien's prior conviction should not redound to his benefit. Only that policy choice, embodied in the terms of the law Congress adopted, commands this Court's respect.

It seems, too, that Mr. Pereida may have overlooked some of the tools Congress afforded aliens faced with record-keeping challenges. In the criminal context, this Court has said that judges seeking to ascertain the defendant's crime of conviction should refer only to a "limited" set of judicial records. *Shepard*, 544 U. S., at 20–23. In part, the Court has circumscribed the proof a judge may consult out of concern for the defendant's Sixth Amendment right to a trial by jury. If a judge, rather than a jury, may take evidence and make findings of fact, the thinking goes, the proceeding

should be as confined as possible. *Id.,* at 25–26; see also *Apprendi*, 530 U. S., at 487–490 (citing *Almendarez-Torres* v. *United States*, 523 U. S. 224 (1998)). But Sixth Amendment concerns are not present in the immigration context. And in the INA, Congress has expressly authorized parties to introduce a much broader array of proof when it comes to prior convictions—indicating, for example, that a variety of records and attestations "shall" be taken as proof of a prior conviction. 8 U. S. C. §1229a(c)(3)(B). Nor is it even clear whether these many listed forms of proof are meant to be the only permissible ways of proving a conviction, or whether they are simply assured of special treatment when produced. Cf. n. 5, *supra.* Mr. Pereida acknowledges none of this, again perhaps understandably if further evidence could not have helped his cause. Still, it is notable that Congress took significant steps in the INA to ameliorate some of the record-keeping problems Mr. Pereida discusses by allowing aliens considerably more latitude in carrying their burden of proof than he seems to suppose.

\*

Under the INA, certain nonpermanent aliens seeking to cancel a lawful removal order must prove that they have not been convicted of a disqualifying crime. The Eighth Circuit correctly held that Mr. Pereida failed to carry this burden. Its judgment is

*Affirmed.*

JUSTICE BARRETT took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

———————

No. 19–438

———————

## CLEMENTE AVELINO PEREIDA, PETITIONER *v.* ROBERT M. WILKINSON, ACTING ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[March 4, 2021]

JUSTICE BREYER, with whom JUSTICE SOTOMAYOR and JUSTICE KAGAN join, dissenting.

This case, in my view, has little or nothing to do with burdens of proof. It concerns the application of what we have called the "categorical approach" to determine the nature of a crime that a noncitizen (or defendant) was previously convicted of committing. That approach sometimes allows a judge to look at, and to look *only* at, certain specified documents. Unless those documents show that the crime of conviction *necessarily* falls within a certain category (here a "crime involving moral turpitude"), the judge must find that the conviction was not for such a crime. The relevant documents in this case do not show that the previous conviction at issue necessarily was for a crime involving moral turpitude. Hence, applying the categorical approach, it was not. That should be the end of the case.

## I

Mr. Pereida is a citizen of Mexico, not the United States. He has lived in the United States for roughly 25 years. In that time, he and his wife have raised three children. He helped support them by working in construction and cleaning. One child is a U. S. citizen. In 2009 the Department of Homeland Security issued a notice to appear that

charged Mr. Pereida with removability because he was never lawfully admitted to the United States. Mr. Pereida conceded that he is removable. But he asked the Attorney General to cancel his removal. The Attorney General has discretion to cancel an order of removal if removal would result in extreme hardship to the noncitizen's U. S. citizen (or lawful-permanent-resident) spouse, parent, or child. 8 U. S. C. §1229b(b)(1)(D). A noncitizen is ineligible for this discretionary relief, however, if, among other things, he has "been convicted of" a "crime involving moral turpitude." §§1229b(b)(1)(C), 1182(a)(2)(A)(i)(I).

Mr. Pereida, in 2010, pleaded *nolo contendere* to, and was found guilty of, having committed a Nebraska state crime, namely, attempt to commit criminal impersonation in violation of Neb. Rev. Stat. §28–608. See §28–608 (2008) (since amended and moved to §28–638 (2020)); §28–201(1)(b). The question here is whether this conviction was for a "crime involving moral turpitude."

## II
## A

I believe we must answer this question by applying what we have called the "categorical approach." The Immigration and Nationality Act (INA) makes a noncitizen ineligible for cancellation of removal if that noncitizen has been "convicted" of certain "offense[s]," 8 U. S. C. §1229b(b)(1)(C), including "crime[s] involving moral turpitude," §1182(a)(2)(A)(i)(I). Similarly, the Armed Career Criminal Act (ACCA) increases the sentence of a defendant convicted of possessing a firearm as a felon if that defendant has three or more previous "convictions" for a "violent felony" or "serious drug offense." 18 U. S. C. §924(e)(1). In ordinary speech, "crime," "offense," and "felony" are ambiguous: They might refer to actions that a defendant took on a particular occasion, or they might refer to the general conduct that a criminal statute forbids. So the question arises, shall a

judge look to how the noncitizen or defendant behaved on a particular occasion (for example, to see whether he behaved violently)? Or shall a judge look to the statute that the defendant was convicted of violating (to see whether the behavior that it forbids is categorically violent)?

We have answered this question clearly and repeatedly in both the INA and ACCA contexts. We have held that both statutes mandate a categorical approach by asking what offense a person was "*convicted*" of, not what acts he "*committed.*" *Moncrieffe* v. *Holder*, 569 U. S. 184, 191 (2013) (emphasis added) (discussing the INA); see also *Taylor* v. *United States*, 495 U. S. 575, 600 (1990) (discussing ACCA). The categorical approach requires courts to "loo[k] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id.*, at 600; see also *Esquivel-Quintana* v. *Sessions*, 581 U. S. ___, ___–___ (2017) (slip op., at 2–3) (applying the categorical approach under the INA); *Mellouli* v. *Lynch*, 575 U. S. 798, 804–806 (2015) (same); *Moncrieffe*, 569 U. S., at 190 (same); *Carachuri-Rosendo* v. *Holder*, 560 U. S. 563, 576 (2010) (same); *Gonzales* v. *Duenas-Alvarez*, 549 U. S. 183, 185–186 (2007) (same); *Mathis* v. *United States*, 579 U. S. ___, ___ (2016) (slip op., at 3) (applying the categorical approach under ACCA); *Johnson* v. *United States*, 559 U. S. 133, 144 (2010) (same); *Descamps* v. *United States*, 570 U. S. 254, 257 (2013) (same); *Shepard* v. *United States*, 544 U. S. 13, 19–20 (2005) (same); *Taylor*, 495 U. S., at 600 (same). A judge, looking at a prior conviction, will read the statutory definition of the offense of conviction and decide whether anyone convicted under that offense is necessarily guilty of the type of crime that triggers federal penalties, *e.g.,* an enhanced sentence or ineligibility for cancellation of removal. See *Mellouli*, 575 U. S., at 805; *Taylor*, 495 U. S., at 600.

Consider a hypothetical example of this approach. Suppose a noncitizen's previous conviction was for violating

State Statute §123.  Suppose further that the Government argues the noncitizen is ineligible for cancellation of removal because he was "convicted of an offense under" §1227(a)(2), namely, an "aggravated felony."  8 U. S. C. §§1229b(b)(1)(C), 1227(a)(2)(A)(iii).  An immigration judge, looking at the conviction, will simply read §123 and decide whether anyone convicted under §123 is necessarily guilty of an aggravated felony, as that term is defined in the INA.  See §1101(a)(43).  That is, the judge will decide whether the conduct that §123 prohibits is in general an aggravated felony.  The judge will *not* look to see whether the defendant's actual conduct on the relevant occasion was or was not an aggravated felony.

Difficult questions can arise when judges apply the categorical approach.  State statutes criminalize many kinds of behavior, often differing in detail one from another.  Take burglary, for example, which is an "aggravated felony" under the INA.  §1101(a)(43)(G).  We can assume that the term "burglary" here, as in ACCA, refers to a specific crime, *i.e.*, generic burglary.  See *Taylor*, 495 U. S., at 599; cf. *Duenas-Alvarez*, 549 U. S., at 189 (accepting that the INA's reference to "theft" in §1101(a)(43)(G) is to generic theft).  Generic burglary is "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."  *Taylor*, 495 U. S., at 599.  Now suppose that §123 defines "burglary" in a different way (say, by including lawful entry with intent to steal).  The sentencing judge then must compare the elements of the state statute and the elements of generic burglary.  If the minimum conduct criminalized by the state statute is encompassed by generic burglary, then the conviction is for generic burglary; if not, then the conviction is not for that aggravated felony.  See *Moncrieffe*, 569 U. S., at 190–191.  In our §123 example, the judge would therefore conclude that the conviction is not for an aggravated felony.

And what is a judge to do if a state statute is "divisible"

into several different offenses, some of which are aggravated felonies and some of which are not? Suppose, for example, that §123 has three subsections referring to (a) burglary of a dwelling, (b) burglary of a boat, and (c) burglary of a railroad car. Since generic burglary is of a dwelling or structure, only subsection (a) qualifies as an aggravated felony. How is the judge to know *which* subsection the defendant was convicted of violating? Simple, we have replied. Under the "modified categorical approach," the judge can look to a limited set of court records to see if they say which subsection the defendant was convicted of violating. The judge can look at the charging papers and the jury instructions (if there was a jury), see *Taylor*, 495 U. S., at 602, and the plea agreement, plea colloquy, or "some comparable judicial record" of the plea (if there was a plea), *Shepard*, 544 U. S., at 26; see also *Nijhawan* v. *Holder*, 557 U. S. 29, 35 (2009) (quoting *Shepard*, 544 U. S., at 26). If these documents reveal that the previous conviction was for §123(a) (dwelling), then, and only then, can the judge conclude that the conviction is for an aggravated felony. As we explained in *Taylor*, the modified categorical approach "allow[s]" "the Government . . . to use [a] conviction" under an overbroad statute to trigger federal penalties (there, ACCA's sentencing enhancement) if the statute contains multiple offenses *and* the permissible documents show that "the jury necessarily had to find" (or the defendant necessarily admitted to) a violent felony. 495 U. S., at 602.

What if, after looking at all the sources we have listed, the judge still does not know which of the three different kinds of burglary was the basis for the conviction? Suppose all the relevant documents that exist speak *only* of a violation of §123. Period. What then? As discussed *infra*, at 9, that is the question we face here, and our cases provide the answer. The judge cannot look at evidence beyond the specified court records. See, *e.g.*, *Mathis*, 579 U. S., at \_\_\_ (slip op., at 18). Instead, in such a case, the judge is to determine

what the defendant necessarily admitted (or what a jury necessarily found) in order for a court to have entered a conviction under §123, since that is the conviction reflected in the permissible documents.

The purpose of the modified categorical approach, like the categorical approach it helps implement, is to compare what "was necessarily found or admitted" to the elements of the generic federal offense. *Id.*, at ___ (slip op., at 4). If the record materials do not specify that the defendant was convicted of §123(a) (dwelling) rather than §123(b) (boat) or §123(c) (railroad car), or if the record materials do not exist at all, then the sentencing judge cannot say that generic burglary was necessarily found or admitted. The Court has said as much before. In *Shepard*, the Court acknowledged that both the "vagaries of abbreviated plea records" and the destruction of "stenographic notes" of a jury charge would preclude the application of ACCA. 544 U. S., at 22. In *Mathis*, the Court explained that if the "record materials" do not "speak plainly," then "a sentencing judge will not be able to satisfy '*Taylor*'s demand for certainty' when determining whether a defendant was convicted of a generic offense." 579 U. S., at ___ (slip op., at 18). And we applied this principle in *Johnson*, holding that a prior conviction did not count as a "violent felony" under ACCA because the statute of conviction swept more broadly than a "violent felony" and "nothing in the record of [the] conviction permitted the District Court to conclude that it rested upon anything more than the least of th[e] acts" prohibited by the state statute. See 559 U. S., at 137; see also *id.,* at 145 ("[I]n many cases state and local records from" state convictions "will be incomplete" and "frustrate application of the modified categorical approach").

That is to say, if (as far as the available, listed documents reveal) the judge could have entered the conviction without the noncitizen admitting to burglarizing a dwelling, then the immigration judge cannot hold that the conviction is

necessarily for an aggravated felony. Applying the categorical approach, the judge must find the conviction is not for an aggravated felony at all.

## B

Why would Congress have chosen such a seemingly complicated method? The method would appear sometimes to lead to counterintuitive results. After all, if the prior crime is for burglary and the offense occurred in a small town near the Mojave Desert, it seems unlikely that the conviction was based on burglary of a boat. Yet, in the absence of an indication from the permissible documents that the conviction necessarily was for burglary of a dwelling, the judge cannot classify the crime of conviction as an "aggravated felony."

The primary reason for choosing this system lies in practicality. Immigration judges and sentencing judges have limited time and limited access to information about prior convictions. See *Mellouli*, 575 U. S., at 806; *Moncrieffe*, 569 U. S., at 200–201; *Shepard*, 544 U. S., at 23, n. 4. The vast majority of prior convictions reflect simple guilty pleas to the crime charged, and, where the record papers are silent, efforts to uncover which of several crimes was "really" at issue can force litigation that the guilty plea avoided. Suppose that the defendant in the Mojave Desert pleaded guilty to a violation of §123 and there is no indication in the relevant record documents which subsection was the basis for the conviction. To find out which of the several provisions was the basis for the conviction, it might be necessary to call as witnesses the defendant, the prosecutor, or even the judge, and question them about a criminal proceeding that perhaps took place long ago. To make his case, the defendant might now deny that the provision involving a dwelling was at issue, and he might seek the opportunity to prove that. As a result, the immigration judge or sentencing

judge now might have to conduct the very fact-based pro-
ceeding that the earlier guilty plea was designed to avoid.
See *id.*, at 21–23.

I do not know how often this kind of counterintuitive ex-
ample will arise. But I do know that, in such a case, there
is a safeguard against the harms that the "prior conviction"
provisions are designed to stop. In the INA context, if a
noncitizen is eligible for cancellation of removal, the Attor-
ney General has *discretionary* power to cancel the removal
order. Where he believes the noncitizen in fact previously
burgled a dwelling (or worse), he can simply deny relief.
And in the ACCA context, a sentencing judge, even where
ACCA is inapplicable, has some discretion in determining
the length of a sentence. If he finds that the present de-
fendant in fact burgled, say, a dwelling and not a boat, he
can take that into account even if the sentencing enhance-
ment does not apply.

And most importantly, whatever the costs and benefits of
the categorical approach, it is what Congress has long cho-
sen with respect to both statutes. The categorical approach
has a particularly "long pedigree in our Nation's immigra-
tion law," tracing back to 1913. *Moncrieffe*, 569 U. S., at
191. As the majority acknowledges, "Congress could have
(and sometimes has) used statutory language requiring
courts to ask whether the defendant's actual conduct meets
certain specified criteria." *Ante*, at 8, n. 2. But it has not
done so in the INA provision here. See *ante*, at 8. Thus,
here, as in the case of ACCA, a judge must ask whether "a
*conviction* of the state offense '"necessarily" involved . . .
facts equating to'" the kind of behavior that the relevant
federal statute forbids. *Moncrieffe*, 569 U. S., at 190 (em-
phasis added). Only if it did does that conviction trigger
federal penalties.

## III

Now, let us apply the categorical approach to the conviction here at issue. The criminal complaint says that Mr. Pereida "intentionally engage[d] in conduct which . . . constituted a substantial step in a course of conduct intended to culminate in his commission of the crime of CRIMINAL IMPERSONATION R.S. 28–608, Penalty: Class IV Felony." App. to Brief for Petitioner 7a. It then quotes the entire criminal-impersonation statute, including all of its parts. See *id.,* at 7a–8a. The complaint does not say which part of the statutory provision the State accuses Mr. Pereida of violating. And the majority, like the Government, concedes that some of the provisions set forth crimes that are not crimes involving moral turpitude. See *ante*, at 10; Brief for Respondent 15.

The journal entry and order related to the charge do not help. They say only that Mr. Pereida pleaded "no contest" to the crime charged, identifying the relevant statute as Neb. Rev. Stat. §28–201 (the attempt provision) and describing the charge as "[a]ttempt of a class 3A or class 4 felo[ny]." App. to Brief for Petitioner 3a. They do not narrow down the possible offenses because all the criminal-impersonation offenses can be a Class III or Class IV felony. See Neb. Rev. Stat. §§28–608(2)(a), (b). We cannot look to jury instructions because there was no jury. Nor is there any plea agreement, plea colloquy, or "comparable judicial record" of the plea that might help determine what Mr. Pereida admitted.

As far as we know, all appropriate documents that exist were before the Immigration Judge. None shows that Mr. Pereida's conviction *necessarily* involved facts equating to a crime involving moral turpitude. He may have pleaded guilty to a crime involving moral turpitude or he may not have. We do not know. The Immigration Judge thus cannot characterize the conviction as a conviction for a crime involving moral turpitude. That resolves this case.

IV

How does the majority argue to the contrary? The majority says that this case is different because which crime was the basis of a prior conviction is a factual question that the categorical approach cannot answer and a noncitizen seeking cancellation of removal, unlike a criminal defendant, bears the burden of proof on that factual question.

First, the majority says that what the defendant's "*actual* offense of conviction was," is a "threshold factual" question that a court must resolve before tackling the categorical approach's "*hypothetical* question" (could someone complete the offense of conviction without committing a crime involving moral turpitude). *Ante*, at 8–9, 14. In my view, there is no unresolved "threshold factual" question in this case since there is no dispute that Mr. Pereida has a prior conviction. We have made clear that unless the offense of conviction, as determined from the statute and the specified documents, is *necessarily* a crime involving moral turpitude, the judge must rule that the conviction was not for a crime involving moral turpitude. The method for determining the offense of conviction (the modified categorical approach) "acts not as an exception, but instead as a tool," retaining "the categorical approach's central feature." *Descamps*, 570 U. S., at 263. Here, looking at the pertinent documents, we can conclude only that Mr. Pereida pleaded guilty to the minimum conduct necessary to complete an offense under Neb. Rev. Stat. §28–608. Thus, the issue is whether someone could complete *that* offense without committing a crime involving moral turpitude.

This question is the central question the categorical approach resolves, not a threshold question. And it is a legal question, not a factual one. To answer it, the judge is to examine the state statute and limited portions of the record that our cases specify and determine from those documents whether the crime of conviction was a crime involving moral turpitude. There is nothing at all unusual about referring

to a question that a judge must answer based on specified legal documents before him as a "question of law." To the contrary, construction of written instruments such as deeds, contracts, tariffs, or patent claims "often presents a 'question solely of law.'" *Teva Pharmaceuticals USA, Inc.* v. *Sandoz, Inc.*, 574 U. S. 318, 326 (2015). And legal questions are not affected by a burden of proof. See, *e.g., Microsoft Corp.* v. *i4i L. P.*, 564 U. S. 91, 100, n. 4 (2011).

The majority points out that we have occasionally referred to the "'fact of a prior conviction.'" *Ante*, at 13. The majority reads too much into that reference. All that we have seriously referred to as a fact is the "*mere* fact of conviction." *Taylor*, 495 U. S., at 602 (emphasis added). Establishing that basic fact is, of course, a prerequisite to application of the categorical approach at all. It goes to "the validity of a prior judgment of conviction." *Apprendi* v. *New Jersey*, 530 U. S. 466, 496 (2000). But the mere fact of conviction is not at issue here. Instead, the question here (and the question the categorical approach asks) is "what [that] conviction *necessarily* established." *Mellouli*, 575 U. S., at 806. We have referred to *that* question as a "legal question." *Ibid.* And rightly so. Thus, if the majority applies the categorical approach, it should agree that there is no factual dispute in this case for any burden of proof to resolve. If the majority does not apply the categorical approach, it does not explain that or why.

Second, the majority points to statutory language stating that an applicant for relief from removal "has the burden of proof to establish" that he "satisfies the applicable eligibility requirements," §1229a(c)(4)(A), which includes the requirement that he not have been convicted of a crime involving moral turpitude. See *ante*, at 5. But burdens of proof have nothing to do with this case. As just discussed, because the categorical approach conclusively resolves the ambiguity as to which offense was the basis for the conviction, there is no role for the burden of proof to play. Indeed,

the Government agreed at argument that the burden of proof would not apply "if this were just a categorical approach case." Tr. of Oral Arg. 53. That this case implicates the modified categorical approach rather than the categorical approach does not make a difference. The modified categorical approach, like the categorical approach, provides a conclusive answer without any resort to burdens of proof. It does so not by "treating [a] (divisible) statute as if it states a single offense," *ante*, at 11, n. 4, but by permitting courts to look at only certain conclusive records of a conviction to determine what that conviction necessarily involved.

This conclusion is consistent with the text. The statutory text itself "singl[es] out this lone requirement for special treatment," *ante*, at 6, by using a term ("conviction") that requires application of a categorical rather than factual analysis. The burden-of-proof provision does not require departing from our settled understanding of the meaning of that term. That the categorical approach applies does not mean that the burden of proof is entirely irrelevant to the requirement that a noncitizen not have a disqualifying prior conviction. The burden of proof may be relevant when "the existence of [a] conviction" is in doubt. See §§1229a(c)(3)(B)(iii), (iv), (vi). Such doubt may have arisen, for example, if Mr. Pereida had contested that a complaint submitted by the Government actually resulted in a conviction or contended that the conviction is against a different Clemente Avelino Pereida. See *ante*, at 12. There is no such doubt in this case. No one disputes that Mr. Pereida has a prior conviction. The parties apparently presented the judge with all the existing relevant documentary material of that conviction. This case concerns a different question: Given the fact of Mr. Pereida's conviction, was it necessarily for a crime involving moral turpitude? The law instructs the judge how to determine, looking at only a limited set of material, whether the crime of conviction is or is not a crime

involving moral turpitude. Because of the categorical approach, there is nothing left for a party to prove.

In my view, the "textual clues" and "statutory signals" relied on by the majority further demonstrate that burdens of proof are not relevant to the question at hand. See *ante*, at 7, 11, n. 5. As the majority points out, the INA sets forth a list of particular materials that, the INA says, "shall constitute proof of a criminal conviction." §1229a(c)(3)(B). They include an "official record of judgment and conviction," an "official record of plea, verdict, and sentence," a "docket entry from court records that indicates the existence of the conviction," court minutes of a "transcript . . . in which the court takes notice of the existence of the conviction," an official "abstract of a record of conviction" that indicates "the charge or section of law violated" (among certain other things), and any other "document or record attesting to the conviction" prepared or kept by the court or by a "penal institution." *Ibid.* The majority also notes that the INA authorizes an immigration judge to make "credibility determination[s]" about a noncitizen's written and oral proof and determine whether "testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof." §§1229a(c)(4)(B), (C). As the majority concedes, this evidence is broader than what we have permitted in our modified categorical approach cases. See *ante*, at 16–17.

I agree with the majority that bearing the burden of proof goes hand in hand with being able to introduce this evidence. But in my view, Mr. Pereida cannot introduce this evidence because it goes beyond the limited record our precedents allow. Hence, he must not bear the burden of proof. The majority's response is that there is no limitation on the documents an immigration judge can look at when applying the categorical approach. That is because, the majority says, the limitation was adopted in the criminal context out of a concern for Sixth Amendment rights that is not present

in the immigration context. *Ibid.* That was not, however,
our only, or even primary, reason for adopting the limita-
tion. Rather, we limited the documents that a judge can
review in order "to implement the object of the statute and
avoid evidentiary disputes." *Shepard*, 544 U. S., at 23, n. 4.
To be sure, we were there referencing ACCA, not the INA.
But the statutes share the relevant object (tying federal
penalties to certain convictions, not certain conduct) sig-
naled by the same statutory text ("conviction"). See *Taylor*,
495 U. S., at 600; *Mellouli*, 575 U. S., at 806. The "central
feature" of this statutory object is "a focus on the elements,
rather than the facts, of a crime." *Descamps*, 570 U. S., at
263. Allowing review of a broad array of evidence is incom-
patible with this statutory object, even if the judge looks at
the evidence only to determine the nature of the offense of
which a noncitizen was convicted. See *Shepard*, 544 U. S.,
at 21–23. I see no reason for the categorical approach to
apply differently under the INA than under ACCA given
their shared text and purpose. The "'long pedigree'" of the
categorical approach in our immigration law further coun-
sels against departing from how we have long understood
that approach to work. *Mellouli*, 575 U. S., at 805–806. Al-
though this Court first applied the categorical approach in
the criminal context, see *ante*, at 7, courts examining the
federal immigration statutes concluded that Congress in-
tended a categorical approach decades before Congress
even enacted ACCA. See *Mellouli*, 575 U. S., at 805–806.

At a minimum, I would not hold, in this case, that the
categorical approach's limitation on the documents a judge
can consult is inapplicable in immigration proceedings.
That argument was neither raised nor briefed by the par-
ties. The Government confirmed several times at oral ar-
gument that it had not argued that a judge should be al-
lowed to look at a broader array of evidentiary materials
because, in its view, that issue was not implicated since no
other documents exist. See Tr. of Oral Arg. 34, 46, 56.

Without the benefit of briefing and argument, we cannot fully anticipate the consequences of today's decision.

## V

The majority does not apply the categorical approach as our cases have explained it and used it. So what happens now? I fear today's decision will result in precisely the practical difficulties and potential unfairness that Congress intended to avoid by adopting a categorical approach.

*First*, allowing parties to introduce a wide range of documentary evidence and testimony to establish the crime of conviction may undermine the "judicial and administrative efficiency" that the categorical approach is intended to promote. *Moncrieffe*, 569 U. S., at 200. As we have recognized before, "[a]sking immigration judges in each case to determine the circumstances underlying a state conviction would burden a system in which 'large numbers of cases [are resolved by] immigration judges and front-line immigration officers, often years after the convictions.'" *Mellouli*, 575 U. S., at 806 (alterations in original). The same is true here. In cases where noncitizens are able to introduce evidence of their crime of conviction, immigration judges now may have to hear and weigh testimony from, for example, the prosecutor who charged the noncitizen or the court reporter who transcribed the now-lost plea colloquy. Given the vast number of different state misdemeanors, plea agreements made long ago, cursory state records, and state prosecutors or other officials who have imperfect memories or who have long since departed for other places or taken up new occupations, there is a real risk of adding time and complexity to immigration proceedings. Such hearings may add strain to "our Nation's overburdened immigration courts." *Moncrieffe*, 569 U. S., at 201.

*Second*, today's decision may make the administration of immigration law less fair and less predictable. One virtue

of the categorical approach is that it "enables aliens 'to an-
ticipate the immigration consequences of guilty pleas in
criminal court,' and to enter '"safe harbor guilty" pleas
[that] do not expose the [alien defendant] to the risk of im-
migration sanctions.'" *Mellouli*, 575 U. S., at 806 (altera-
tions in original). The majority's approach, on the other
hand, may "deprive some defendants of the benefits of their
negotiated plea deals." *Descamps*, 570 U. S., at 271. A
noncitizen may agree to plead guilty to a specific offense in
a divisible statute because that offense does not carry ad-
verse immigration consequences. But in many lower crim-
inal courts, misdemeanor convictions are not on the record.
See Brief for National Association of Criminal Defense
Lawyers et al. as *Amici Curiae* 7–9 (NACDL Brief ); Brief
for United States in *Johnson* v. *United States*, O. T. 2008,
No. 08–6925, p. 43 ("[P]lea colloquies . . . are not always
transcribed or otherwise available"). In jurisdictions where
misdemeanor convictions are on the record, such records
frequently omit key information about the plea and may be
destroyed after only a few years. See NACDL Brief 10–16;
see also Brief for United States in *Voisine* v. *United States*,
O. T. 2014, No. 14–10154, p. 45 ("[R]ecords from closed mis-
demeanor cases are often unavailable or incomplete"). And
even where complete records do exist, noncitizens, who of-
ten are unrepresented, detained, or not fluent English
speakers, may not have the resources to offer more than
their own testimony. See Brief for Immigrant Defense Pro-
ject et al. as *Amici Curiae* 11–19. Thus, under the major-
ity's approach, noncitizens may lose the benefit of their plea
agreements unless their testimony persuades the immigra-
tion judge that they pleaded guilty to the lesser offense.

 *Third*, today's decision risks hinging noncitizens' eligibil-
ity for relief from removal on the varied charging practices
of state prosecutors. In some cases (perhaps even this one),
state prosecutors and state courts may treat statutes that

list multiple offenses as if they list only one, whether inadvertently or as a matter of practice. See NACDL Brief 13 (explaining that "[a]cross many states and localities, the records of misdemeanor pleas often do not include the statutory subsection or factual basis underlying the conviction"). It sometimes can be challenging to determine whether a fact is an element or a means (and so whether a statute is divisible or not). If a prosecutor mistakes a divisible statute for an indivisible one, she may well not identify which particular offense was the basis for the charge. Some States, including Nebraska, do not require a pleading to identify the alternative means of committing a crime— as opposed to the alternative crimes—on which a conviction is based. See 5 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure §19.3(a), p. 263 (3d ed. 2007); *State* v. *Brouilette*, 265 Neb. 214, 221, 655 N. W. 2d 876, 884 (2003) ("[T]his court has made clear that certain crimes are single crimes that can be proved under different theories, and that because each alternative theory is not a separate crime, the alternative theories do not require that the crime be charged as separate alternative counts"). When a divisible statute is wrongly treated as indivisible, for whatever reason, records will be "inconclusive" because the defendant was not, as a matter of fact, convicted of any particular alternative crime. It would be unfair for mandatory deportation to result from inconclusive records in these cases.

The Court dismisses these "policy" concerns on the ground that Congress has chosen "to conclude that uncertainty about an alien's prior conviction should not redound to his benefit." *Ante*, at 16. But Congress made precisely the opposite choice by tying ineligibility for relief to a noncitizen's "conviction." That text mandates a categorical approach in which uncertainty about a conviction redounds to a noncitizen or defendant's benefit. The approach is underinclusive by design, and the majority's "objection to th[e categorical approach's] underinclusive result is little more

than an attack on the categorical approach itself.”
*Moncrieffe*, 569 U. S., at 205.

Finally, it makes particularly little sense to disregard
this core feature of the categorical approach here. See *id.*,
at 203–204. As already noted, cancellation of removal is
discretionary. Thus, when a conviction is not disqualifying
under the categorical approach, the Government may still
deny the noncitizen relief. If it turns out that an individual
with a record like the one here in fact violated the statute
in a reprehensible manner, that can be accounted for during
the discretionary phase of the proceedings, when the cate-
gorical approach does not apply.

\*     \*     \*

In my view, the Court should follow Congress’ statute.
Congress has long provided that immigration courts apply-
ing the INA provision here, like sentencing courts applying
ACCA, must follow the categorical approach. See *Mellouli*,
575 U. S., at 805–806. Our cases make clear how that ap-
proach applies in a case like this one. We should follow our
earlier decisions, particularly *Taylor*, *Shepard*, and *John-
son*. And, were we to do so, ineluctably they would lead us
to determine that the statutory offense of which Mr.
Pereida was “convicted” is not “necessarily” a “crime involv-
ing moral turpitude.”

Because the Court comes to a different conclusion, with
respect, I dissent.