**Alonzo CHOPPS, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–01–00398–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

June 13, 2002.

---

David S. Barron, Bryan, for appellants.

Brenda Bailey, Bryan, for appellees.

Panel consists of Justices YATES, SEYMORE and GUZMAN.

## MAJORITY OPINION

LESLIE BROCK YATES, Justice.

A jury convicted appellant, Alonzo Chopps, Jr., for unlawfully carrying a weapon. *See* TEX. PEN.CODE ANN. § 46.02 (Vernon Supp.2002). In one point of error, appellant claims the evidence is legally insufficient to support his conviction. We affirm.

### Background and Procedural History

Deputy Constable Steven Emert was on patrol when he saw a vehicle parked in the middle of the street with the driver's door open and engine running. He then saw appellant chasing a man down the street, carrying an object that Emert referred to as a "club." Emert activated his emergency lights and appellant responded by returning to the vehicle. Appellant dropped the object at Emert's request. At trial, Emert described the object as long, cylindrical in nature, reddish and green in color, with an image of an Aztec warrior holding a shield and club. Joe Aguilar, an employee of the Texas Department of Corrections, was riding along with Emert. Aguilar testified that he witnessed the chase and he also described the item as a "club." Appellant was charged with unlawfully carrying a weapon and with attempted assault.

The jury acquitted appellant of the attempted assault charge but found him guilty of unlawfully carrying a weapon. Punishment was assessed at sixty days' confinement. This appeal followed.

### Legal Sufficiency

In one point of error, appellant claims the evidence is legally insufficient to prove the item he carried was a "club" as defined by Texas Penal Code section 46.01(1). When reviewing legal sufficiency, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Cardenas v. State*, 30 S.W.3d 384, 389 (Tex.Crim.App. 2000). If a reviewing court determines the evidence is insufficient under the *Jackson* standard, it must render a judgment of acquittal because if the evidence is insufficient under *Jackson*, the case should never have been submitted to the jury. *See Jackson*, 443 U.S. at 318–19, 99 S.Ct. 2781. In a legal sufficiency challenge, we do not re-weigh the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000).

A person commits an offense if that person intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club. *See* TEX. PEN.CODE ANN. § 46.02 (Vernon Supp. 2002). A "club" is an instrument that is specially designed, made, or adapted for the purpose of inflicting serious bodily injury or death by striking a person with the

instrument, and includes but is not limited to the following: blackjack; nightstick; mace; tomahawk. TEX. PEN.CODE ANN. § 46.01 (Vernon Supp.2002). Here, appellant was charged by information with carrying an illegal club, "to-wit: a wooden club approximately 2½ feet long."

■ The State's evidence is sufficient to support the jury's finding that the item was a "club." The object was described as being a two-and-a-half-foot long, red and green cylindrical wooden stick, with an image of an Aztec warrior holding a shield and club. Emert testified that the item had no purpose other than as a weapon and that its "mere existence is a weapon." In addition, Aguilar testified that he was familiar with the item and that its designed purpose was to inflict serious bodily injury. The State presented—without objection—the following testimony regarding the item's designed purpose:

Q: Mr. Aguilar, have you ever seen a club like that before?

A: Yes, sir.

Q: Where?

A: Usually they sell them in Mexico.

Q: Have you ever seen them for sale here in the United States?

A: I've seen them a couple of times at a flea market.

Q: Is it your—has your police training given you a definition of what a club is?

A: Yes. A club is something to—for use to commit bodily harm on another individual.

Q: Okay.

A: The sole purpose is that.

Q: Do you know of any other purpose for that item there other than to hurt someone?

A: No sir. That's the only reason that this would be.[1]

In response to questioning about whether the item was a "piñata bat," Aguilar testified that he had never seen this type of club used as a piñata bat. In contrast, appellant argued the item is a "baseball bat," "piñata bat," or "walking stick."[2] The conflicting descriptions were possible because the item in question is not one that has a common purpose or usage.

■ The lack of a clearly designed purpose is what distinguishes this case from those cited by the dissent, in which the object in question was clearly designed for some purpose other than to inflict serious injury. *See Reisner v. State*, 627 S.W.2d 728, 728 (Tex.Crim.App. [Panel Op.] 1982) (leather bracelet with metal studs); *Alexander v. State*, 617 S.W.2d 269, 270 (Tex. Crim.App. [Panel Op.] 1981) (motorcycle chain); *Coleman v. State*, 790 S.W.2d 369, 370 (Tex.App.-Dallas 1990, no pet.) (wooden cylinder imprinted with words "V & B

---

1. The dissent simply dismisses this testimony because it concludes that Aguilar's identification of the item as a club was based solely on its use by appellant. On cross-examination, Aguilar testified that whether someone carrying the item in question was committing an offense depended on "what you're doing with it" and "why this person has it at the time." This is true, because section 46.02 does not apply to persons who, for example, are traveling or are engaged in lawful sporting activities. See TEX. PEN.CODE ANN. § 46.15(b) (Vernon Supp.2002). We do not read Aguilar's testimony regarding the significance of how a weapon is used to suggest that appellant's use

of the item in this case transformed a non-weapon into a weapon.

2. The record indicates that appellant complied with the State's request and demonstrated for the jury how he used this two-and-a-half-foot item as a walking stick, to which the prosecutor replied "that's an awful short stick" and pointed out the stick was not worn down. As the exclusive judge of the credibility of the witnesses, the jury was free to disregard appellant's testimony. *See Wyatt v. State*, 23 S.W.3d 18, 30 (Tex.Crim.App.2000).

TIRE KNOCKER").[3] Here, the evidence presented showed the object was a two-and-a-half-foot long, red and green cylindrical wood stick, with an image of an Aztec warrior holding a shield and club. The jury heard conflicting evidence from the State's witnesses and from appellant about the item's purpose. Reconciliation of conflicts in the evidence is within the exclusive province of the jury. *See Wyatt*, 23 S.W.3d at 30. The jury concluded the item was a "club." We find Aguilar's testimony that he is familiar with the item and its designed purpose "enough credible testimony" to support the conviction under a legal sufficiency challenge. *Id.*

■ Further, even if the dissent's interpretation of the witness's testimony is correct that the item was a "club" based in part on how appellant used it, we believe that in this case the jury was entitled to consider evidence of the item's use as *a factor* in determining whether the item was "designed" for the purpose of inflicting serious bodily injury. The dissent relies upon *Ex parte Andrews*, in refusing to consider appellant's use of the item. 814 S.W.2d 839, 841 (Tex.App.-Houston [1st Dist.] 1991, pet. dism'd). However, the issue in that case was whether a bicycle lock was a "criminal instrument" under Texas Penal Code section 16.01. *See* Tex. Pen.Code Ann. § 16.01(b) (Vernon 1994). The court concluded an object does not become a criminal instrument by the context of its use, but by the limited nature and specialized criminal use of its own distinctive properties. *Andrews*, 814 S.W.2d at 841. Likewise, when it is clearly established that an item was "designed" to be something other than a weapon, then evidence of the use of that item in committing an offense is insufficient to bring the item within the definition of a club. *See Alexander*, 617 S.W.2d at 270 (recognizing that items such as baseball bats and rolling pins that are capable of inflicting serious injury but not specifically designed to do so are excluded from the statutory definition of "club"). However, when the issue is whether the item was "specially designed or made" to be used as a weapon, and conflicting evidence exists as to the designed purpose, we find that evidence regarding how the item was being used may be considered by the fact finder to assist in its determination of whether the item was specially designed or made for the purpose of inflicting serious bodily injury or death. In this case, the item held by appellant does not have a well-known designation or purpose, and the jury heard conflicting testimony about this item's purpose. Therefore, appellant's use may be *a factor* in determining if it is a "club" within the meaning of Texas Penal Code section 46.01(1).

Viewing the evidence in the light most favorable to the verdict, a rational jury could have found the essential elements of unlawfully carrying a weapon. Accordingly, appellant's point of error is overruled. The judgment of the trial court is affirmed.

SEYMORE, J. dissenting.

CHARLES W. SEYMORE, Justice, dissenting.

I respectfully dissent because there is insufficient evidence that the object in question is a club specially designed, made, or adapted for the purpose of inflicting serious bodily injury.

At trial, both Constable Embry and Joe Aguilar described appellant's bat[1] as a

---

3. In *Meza v. State,* the only evidence concerning the object's design was the arresting officer's description of it as a "club." 652 S.W.2d 399, 400–01 (Tex.Crim.App.1983).

1. The record contains a picture of the object in question. It is has all the physical characteristics of a little league baseball bat.

club and a weapon. Constable Embry opined that the bat was specially designed or made to inflict serious bodily injury or death. Witness Joe Aguilar similarly concluded that the bat's sole purpose was to hurt someone. However, when pressed to explain the reasoning for their conclusions, both witnesses stated that it was appellant's *use* of the bat that made it an illegal club. Constable Embry agreed that whether the bat was an illegal weapon depends on how it was used and the possessor's "purpose for it." According to Constable Embry, the bat was an illegal weapon because appellant adapted it to cause serious bodily injury. Joe Aguilar's conclusion was similarly based on "what you're doing with it" and "why this person has it at the time." According to Mr. Aguilar, "[appellant] ... was chasing an individual with that club, and that's the difference." There was no testimony or other evidence that the bat in question had been *physically* altered to enhance one's ability to cause serious bodily injury.

The State argues that the bat meets the statutory definition of a club because a jury could conclude that appellant meant to harm the complainant with it. Certainly, the conclusions of Constable Embry and Joe Aguilar were based on such reasoning. Appellant counters that a benign object cannot be transformed into or "adapted" as an unlawful weapon by the manner of its use. I agree. Otherwise, every possible instrument would be an illegal weapon if used in an assault or attempted assault. The offense of unlawfully carrying a weapon is defined by the inherent characteristics of the object and not by the manner in which an appellant uses it. *See Ex Parte Andrews*, 814

S.W.2d 839, 841 (Tex.App.-Houston [1st Dist.] 1991, pet. dism'd).

"As originally made, a baseball bat, crowbar, or axe handle could be used to inflict serious bodily injury or death; however, to bring such an object within the definition of a 'club,' it is necessary to prove that such an object was specially designed, made, or adapted to inflict serious bodily injury or death." *Reisner v. State*, 627 S.W.2d 728, 729 (Tex.Crim.App. 1982).[2] Instruments readily capable of inflicting serious bodily injury but not specifically designed to do so are excluded from the definition of "illegal club." *See Meza v. State*, 652 S.W.2d 399, 400 (Tex.Crim. App.1983) (reasoning that a person may be prosecuted for an attempted or completed assault by carrying an object with intent to inflict injury if his criminal design progresses far enough); *Alexander v. State*, 617 S.W.2d 269, 270 (Tex.Crim.App.1981).

Apart from Constable Embry's and Mr. Aguilar's conclusions, *based solely on appellant's use of the bat*, there is no evidence that the bat was made or designed to inflict serious bodily injury or harm. The majority refers to appellant's description of the item in question as a "baseball bat," "piñata bat" or "walking stick." Additionally, the majority concludes the item does not have a well-known purpose. This conclusion reveals a defect in the analysis of the majority. If the item has no well-known purpose, absent testimony regarding design, there is no evidence that it was *specially* made or designed for the purpose of inflicting serious bodily injury or death. I cannot conclude that an object with all the physical characteristics of a baseball bat, merely described as a "club"

**2.** In *Reisner,* the alleged illegal club was a wrist bracelet containing metal spikes. 627 S.W.2d at 728. A police officer testified how the object could be used to inflict injury but did not testify the object was specially made,

designed, or adapted to inflict death or serious bodily injury. *Id.* The court held the bracelet did not meet the definition of a club. *Id.* at 729.

by the officer and his passenger, is an instrument specially made, designed, or adapted for the purpose of inflicting serious bodily injury or death. *See Coleman v. State,* 790 S.W.2d 369, 372 (Tex.App.-Dallas 1990, no pet.). If unsubstantiated and conclusory testimony were sufficient, any arbitrary instrument, like a telephone, could be considered a club or other illegal weapon.[3]

Additionally, there is no evidence that the bat was adapted to inflict serious bodily injury or death. *See Meza,* 652 S.W.2d at 400. In its ordinary use, "adapted" means "to make suitable or fit (as for a particular use, purpose or situation), by means of physical change, modification, or alteration." WEBSTER'S THIRD NEW INT'L DICTIONARY 23 (3d ed.1993).[4] Such a physical change, modification, or alteration must be accomplished for the specific purpose of inflicting serious bodily injury or death. *See Alexander,* 617 S.W.2d at 270 (mere presence of nylon cord in last link of motorcycle chain insufficient to prove adaptation as a club). Thus, appellant's intended use of the bat to strike the complainant was not an adaptation of it.

Without citing any authority, the majority considers "appellant's use *a factor* in determining if it is a club within the meaning of the Texas Penal Code, Section 46.01(1)." The majority fails to recognize that this consideration is repugnant to the jury verdict of acquittal for the attempted assault charge. If the jury did not convict appellant for *using* the bat to commit an assault, why should this court consider *"use"* to be *a factor* in concluding the bat is an illegal weapon? Consideration of *"use"* as a factor is more problematic than helpful. For example, a group of young men form an association called "The Louisville Sluggers." Members of the association use physically unaltered baseball bats to resolve disputes with their enemies. Many members of the association paint a depiction of a war eagle on their bats. No one knows the manufacturer of the bats, but they are variously used to play baseball, hit piñatas and, occasionally, as walking sticks. One member loans his bat to a friend who has never used a bat to resolve a dispute. The friend is arrested while carrying the bat in a public park. Apparently, the majority would have no problem affirming the friend's conviction for carrying an illegal weapon because the bat has previously been *used* to inflict bodily injury.

The State failed to prove *beyond a reasonable doubt* that the bat here was "specially made or designed to inflict serious bodily injury." *Reisner,* 627 S.W.2d at 729. Accordingly, I respectfully dissent.

---

**3.** "[A] duck which is called a horse does not become a horse; a duck is a duck." *City of Corpus Christi v. Bayfront Assocs., Ltd.,* 814 S.W.2d 98, 109 n. 4 (Tex.App.-Corpus Christi 1991, writ denied).

**4.** Words, phrases, and terms used in the penal code are given their ordinary meaning in common language, except where specially defined. *Neumuller v. State,* 953 S.W.2d 502, 511 (Tex.App.-El Paso 1997, pet. ref'd); *see* TEX. PEN CODE ANN. § 1.05(b) (Vernon 1994) ("Unless a different construction is required by the context, Sections 311.011, 311.012, 311.014, 311.015, and 311.021 through 311.032 of Chapter 311, Government Code (Code Construction Act), apply to the construction of this code."); TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998) ("(a) Words and phrases shall be read in context and construed according to the rules of grammar and common usage. (b) Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). "Adapted" is not defined in chapter 46 of the penal code.