UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-2403

JORGE EUGENIO RANGEL-ZARAZUA,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Submitted:  September 1, 2021                    Decided:  September 28, 2021

Before MOTZ and AGEE, Circuit Judges, and KEENAN, Senior Circuit Judge.

Petition for review denied by unpublished per curiam opinion.

Jessica Palumbo, PALUMBO LAW, LLC, Atlanta, Georgia; Steven Meier, STEVEN T. MEIER, PLLC., Charlotte, North Carolina, for Petitioner.  Joseph H. Hunt, Assistant Attorney General, Cindy S. Ferrier, Assistant Director, Genevieve M. Kelly, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After an Immigration Judge ("IJ") pretermitted Jorge Eugenio Rangel-Zarazua's application for cancellation of removal under 8 U.S.C. § 1229b(b)(1), Rangel appealed to the Board of Immigration Appeals ("BIA") and filed a motion to terminate removal proceedings for lack of subject matter jurisdiction. The BIA affirmed the IJ's decision to deny his application and denied the accompanying motion to terminate. Rangel now petitions for review. Finding no error, we deny the petition.

## I.

Rangel is a native and citizen of Mexico who entered the United States without inspection at an unknown place and date. In 1994, he was arrested for—and, in 1995, pleaded guilty to—"Carrying [a] Prohibited Weapon" under section 46.02 of the Texas Penal Code ("Texas conviction").[1] At the time, this statute criminalized "intentionally, knowingly, or recklessly carr[ying] on or about his person a handgun, illegal knife, or club." Tex. Penal Code § 46.02 (1995).

In 1996, Rangel was returned to Mexico but reentered the United States without inspection in 1998. In 2016, he was arrested on forgery charges in Tennessee. Following that arrest, the local police department transferred him to the custody of Immigration and Customs Enforcement. On September 21, 2016, the Department of Homeland Security ("DHS") commenced removal proceedings by issuing Rangel a Notice to Appear. While

---

[1] Rangel was riding in an acquaintance's car when police stopped the vehicle and searched it, recovering two guns from the trunk and subsequently arresting all occupants.

2

the Notice included the location of the hearing, it did not include a date or time at which he was to initially appear before an IJ, but informed him that he would have to appear on a date and time yet to be determined. Following issuance of a Notice of Hearing that included the date and time, continuance of that hearing, and transfer of venue, Rangel received an updated Notice of Hearing for May 4, 2017, at 8:30 a.m.

By written pleading, Rangel argued that he was eligible for relief under 8 U.S.C. § 1229b(b)(1), a provision permitting the Attorney General to cancel the removal of a noncitizen and adjust his status to that of lawful permanent resident ("LPR") if he satisfies certain requirements, one of which entails a lack of a "firearm offense[]," as defined under 8 U.S.C. § 1227(a)(2)(C). In his application for cancellation of removal, Rangel represented that he had never been arrested or convicted of any criminal offense but, after the government contested the issue, acknowledged his Texas conviction. Nonetheless, Rangel argued that the IJ should find that he was not convicted of a firearm offense under § 1227(a)(2)(C) because the available record failed to specify the weapon he had been convicted of carrying, and his original conviction records had been destroyed.

In response, DHS filed a motion to pretermit Rangel's application, citing his Texas conviction as rendering him ineligible for cancellation of removal. The IJ granted this motion in November 2017, finding that although the available record was inconclusive as to whether the Texas conviction was a firearm offense under § 1227(a)(2)(C), the statute under which Rangel had been convicted "includes a firearm as an element" and Rangel had conceded that this conviction could be considered a firearm offense. A.R. 137 n.1. In turn, given that Rangel had the burden of establishing that he was not convicted of such an

3

offense, the inconclusive record "cut[] against" him such that he had failed to meet his burden of demonstrating his eligibility for cancellation of removal. A.R. 137.

On appeal to the BIA, Rangel moved to terminate the removal proceedings for lack of subject matter jurisdiction, arguing that the failure to specify a hearing date and time on the Notice to Appear deprived the IJ of jurisdiction. The BIA denied this motion, reasoning that subsequent notices to Rangel provided this information. The BIA also affirmed the IJ's decision to pretermit, concluding that Rangel had failed to carry his burden of proving his eligibility for cancellation of removal due to his Texas conviction.

Rangel filed a timely appeal, over which this Court has jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).[2]

II.

Upon a petition for review of a final BIA order, this Court reviews legal determinations de novo, "affording appropriate deference to the BIA's interpretation of the [Immigration and Nationality Act ("INA")] and any attendant regulations." *Lin v. Mukasey*, 517 F.3d 685, 691–92 (4th Cir. 2008). Congress has statutorily prescribed a particularly stringent standard of review for factual findings, requiring that they be deemed "conclusive

---

[2] This appeal was initially set for oral argument in September 2020, but we placed it in abeyance pending the Supreme Court's resolution of *Pereida v. Wilkinson*, 141 S. Ct. 754 (2021), which raised a similar issue to Rangel's eligibility argument. Once the Supreme Court issued its decision in that case, Rangel's appeal was removed from abeyance and submitted on the briefs.

unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Salgado-Sosa v. Sessions*, 882 F.3d 451, 456 (4th Cir. 2018).

## III.

On appeal, Rangel maintains that the IJ lacked jurisdiction due to the deficient Notice to Appear and that he carried his burden of demonstrating eligibility for cancellation of removal notwithstanding the inconclusive record on his Texas conviction. We address each contention in turn.

## A.

We begin with Rangel's jurisdictional argument, concluding that it is foreclosed by *United States v. Cortez*, 930 F.3d 350 (4th Cir. 2019).

Proceedings commence and "[j]urisdiction vests" with the IJ when the government files a "charging document" in the Immigration Court. 8 C.F.R. § 1003.14(a). A "[n]otice to [a]ppear" qualifies as one such "charging document." *Id.* § 1003.13. The date and time of a hearing need not be included in the initial notice to appear. *Id.* § 1003.15(b)–(c). Instead, this information may be provided to a noncitizen—as it was in Rangel's case—by the Immigration Court itself. *Id.* § 1003.18(b). We recognized as much in *Cortez*, explaining that a notice to appear that does not specify the date and time of a noncitizen's removal hearing does not deprive an IJ of jurisdiction so long as the Immigration Court later sends to the noncitizen a notice of hearing specifying that information. 930 F.3d at 362–63 (observing that where the date and time are not included in the initial notice to

appear, "the [I]mmigration [C]ourt itself is responsible for ensuring notice to a noncitizen of a hearing's 'time, place, and date'").

Here, although the Notice to Appear did not specify the date and time of Rangel's initial removal hearing, the Immigration Court later sent him that information in a Notice of Hearing. Finding no error under *Cortez*, we are thus satisfied that the BIA correctly concluded that the IJ had jurisdiction over this matter.

B.

Next, Rangel contends that the IJ and the BIA erred by determining that he failed to carry his burden of demonstrating eligibility for cancellation of removal due to the inconclusive record on his Texas conviction. We disagree.

Under 8 U.S.C. § 1229b(b)(1)(C), the Attorney General may cancel the removal and adjust the status to LPR of any noncitizen who, *inter alia*, has not been convicted of a firearm offense under § 1227(a)(2)(C). In other words, if a noncitizen is convicted of a firearm offense, he is ineligible for cancellation of removal. In this context, the noncitizen bears the burden of demonstrating that he is eligible for discretionary relief. *Id.* § 1229a(c)(4)(A)(i). Specifically, "[i]f the evidence indicates that [a disqualifying ground, such as a firearm offense,] may apply," then the noncitizen must prove by a preponderance of the evidence that such a disqualifying ground is inapplicable. 8 C.F.R. § 1240.8(d).

1.

When considering whether Rangel's Texas conviction constitutes a disqualifying firearm offense under the INA, "we use the familiar categorical approach set forth by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990)," *Gordon v. Barr*, 965 F.3d

6

252, 257 (4th Cir. 2020), or in a "narrow range of cases," the "modified categorical approach," *Karimi v. Holder*, 715 F.3d 561, 567 (4th Cir. 2013); *see Descamps v. United States*, 570 U.S. 254, 261–62 (2013). To determine which approach applies, we begin by deciphering whether the statute at issue is divisible or indivisible.

a.

The categorical approach applies to indivisible statutes, which "state only a single crime, often making it a simple thing for a judge to conclude from a defendant's criminal records that he was convicted of violating statute *x* and thus necessarily convicted of crime *x*." *Pereida v. Wilkinson*, 141 S. Ct. 754, 762–63 (2021). This approach looks to the elements of the offense rather than the conduct in which the noncitizen engaged. "If all permutations of the conduct proscribed by the elements of the offense involve [a firearm], then the offense categorically qualifies as a [disqualifying firearm offense]." *Martinez v. Sessions*, 892 F.3d 655, 658 (4th Cir. 2018). "But if those elements can include behavior that does not involve [a firearm], the crime is not categorically [a firearm offense]." *Id.* (citation omitted).

Courts employ the "modified" categorical approach only when analyzing divisible statutes. *Pereida*, 141 S. Ct. at 763. When "a single criminal statute . . . list[s] multiple, stand-alone offenses, some of which trigger consequences under federal law, and others of which do not," it is divisible. *Id.* Under the modified categorical approach, courts "review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction." *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016). In doing so, we may consult "a limited class of documents (for example, the indictment, jury

7

instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* at 2249.

b.

We are persuaded that the statute under which Rangel was convicted, section 46.02 of the Texas Penal Code, is divisible. It provides: "A person commits an offense if he intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club." *Id.* § 46.02(a).

As an initial matter, the charge and jury instructions are important to determining the divisibility of a statute. As *Descamps* observed, "[a] prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives," while "the jury, as instructions in the case will make clear, must then find that element, unanimously and beyond a reasonable doubt." 570 U.S. at 272. *Descamps* considered a hypothetical statute similar in structure to section 46.02: "criminaliz[ing] assault with any of eight specified weapons" of which only "assault with a gun counts as an [Armed Career Criminal Act ("ACCA")] offense." *Id.* The Supreme Court concluded that such a statute would be divisible because "[a] later sentencing court need only check the charging documents and instructions ('Do they refer to a gun or something else?') to determine whether in convicting a defendant under that divisible statute, the jury necessarily found that he committed the ACCA-qualifying crime." *Id.* By contrast, the Court explained that a hypothetical statute criminalizing assault with an "indeterminate 'weapon'" would be indivisible. In that scenario, the jury "need not all agree on whether the defendant used a gun or a knife or a tire iron (or any other particular weapon that might appear in an imagined

8

divisible statute), because the actual statute requires the jury to find only a 'weapon.'"[3] *Id.* at 272–73.

Here, the Texas Penal Code contains separate definitions for "handgun," "illegal knife," and "club." Tex. Penal Code § 46.01. In turn, Texas caselaw indicates that the jury must find that the weapon involved in an offense meets the relevant definition of the specifically-charged weapon in order for the defendant to be convicted. For example, in *Coleman v. State*, "[a]n information was filed against [the defendant] for unlawfully and knowingly carrying on or about his person a club"—not a "weapon." 790 S.W.2d 369, 370 (Tex. App. 1990). The defendant contested the conviction, arguing there was insufficient evidence "to support a finding that he carried a 'club' because no evidence was presented that the instrument was specifically designed, made, or adapted for the purpose of inflicting serious bodily injury or death"—that is, that it met the statutory definition of a "club." *Id.* The Texas Court of Appeals agreed, concluding that "the evidence [was] insufficient to prove beyond a reasonable doubt that [the defendant] unlawfully and knowingly carried on

---

[3] *See also Carcamo v. Lynch*, 648 F. App'x 306, 311 (4th Cir. 2016) (citing *Descamps*' "exhaustive list of 'eight specified weapons'" as setting forth "a list of alternative elements" in a divisible statute); *United States v. Cornette*, 932 F.3d 204, 212–13 (4th Cir. 2019) (holding that a Georgia burglary statute was indivisible because "[t]he lack of a jury unanimity requirement on the type of location burgled indicates that burglary includes multiple alternative means as opposed to elements"); *United States v. Royal*, 731 F.3d 333, 341 (4th Cir. 2013) (observing that a statute was indivisible because "Maryland juries are not instructed that they must agree 'unanimously and beyond a reasonable doubt' on whether the defendant caused 'offensive physical contact' or 'physical harm' to the victim; rather, it is enough that each juror agree only that one of the two occurred, without settling on which").

or about his person a club."[4] *Id.* at 372. Were the statute indivisible, the prosecutor would not have been required to charge—nor the jury required to make a finding—as to the specific identity of the weapon.[5, 6]

The divisibility of the statute is also supported by Texas caselaw establishing that unlawful possession of a handgun under section 46.02 is a lesser-included offense of unlawful possession of a firearm by a felon under section 46.05. *Hazel v. State*, 534 S.W.2d 698, 700–01 (Tex. Crim. App. 1976). In *Hazel*, the Texas Court of Criminal Appeals considered whether "unlawfully carrying a weapon, to wit: a handgun, a misdemeanor under [section 46.02], is a lesser included offense of unlawful possession of a firearm by a felon [under section 46.05]." *Id.* at 699. The court observed that "[t]he offense for which appellant was convicted was (1) intentionally and knowingly (2) carrying on or about his person (3) a handgun." *Id.* at 701. And because carrying a "handgun" specifically

<hr />

[4] Cases and charging documents postdating Rangel's conviction also support this view. *See, e.g.*, *Washington v. Salazar*, 747 F. App'x 211, 213, 216 (5th Cir. 2018) (holding that an officer lacked probable cause to suspect an individual of "carrying a handgun" under section 46.02 because the evidence showed only that the individual had carried a shotgun); *Rodriguez v. State*, No. 05-17-00836-CR, 2018 WL 6167834, at *4 (Tex. App. Nov. 26, 2018) (acknowledging evidence in the record supporting the jury's conclusion that the perpetrator was specifically carrying a handgun); *Chopps v. State*, 79 S.W.3d 258, 260 (Tex. App. 2002) (observing that the "appellant was charged by information with carrying an illegal club, 'to-wit: a wooden club approximately 2 ½ feet long" and that "[t]he State's evidence [was] sufficient to support the jury's finding that the item was a 'club'"); Jury Instructions, *Texas v. Hayes*, No. 32307B, 2002 WL 34390942 (Tex. Dist. Jan. 15, 2002) (instructing a jury that "if you find and believe from the evidence beyond a reasonable doubt that . . . the Defendant [in violation of section 46.02] was unlawfully carrying a weapon, to-wit: a firearm you will find against the defendant's claim of self defense").

[5] Rangel does not direct us to any cases in which a defendant was charged with unlawfully carrying an unspecified weapon.

[6] In this vein, at the time of Rangel's offense, section 46.03 of the Texas Penal Code also established weapon-specific affirmative defenses to section 46.02.

constituted an element of the offense under section 46.02, the court determined that the conviction also satisfied the "firearm" element of section 46.05's unlawful possession of a firearm by a felon offense. *Id.* at 700–01. However, if section 46.02 was not divisible into separate crimes based on the type of weapon carried, the court would have been unable to identify the conviction as one for unlawfully carrying a handgun. In turn, it could not have concluded that unlawfully carrying a handgun was a lesser-included offense of unlawful possession of a firearm by a felon.[7]

For these reasons, section 46.02 "list[s] multiple, stand-alone offenses, some of which trigger consequences under federal law [(unlawful carrying of a handgun)], and others of which do not [(unlawful carrying of an illegal knife or club)]." *Pereida*, 141 S. Ct. at 763. We therefore conclude that section 46.02 of the Texas Penal Code is divisible.

2.

The Supreme Court's recent decision in *Pereida* guides our remaining analysis as we apply the modified categorical approach to this divisible statute.

If a defendant is convicted of an offense under a divisible statute, he bears the burden to produce "evidence encompassed within the 'record of conviction'—such as a charging instrument, a plea agreement, or a plea colloquy transcript—which demonstrates that he pled guilty to, and was convicted of, an offense falling outside the scope of the [firearm

---

[7] The Texas Court of Appeals has also indicated that it considers section 46.02 to be divisible, albeit in the doubly jeopardy context. *See Ex parte Gonzalez*, 147 S.W.3d 474, 479 (Tx. App. 2004) ("We hold that the allowable unit of prosecution under section 46.02 is the weapon. Therefore, the unlawful carrying of a knife and the unlawful carrying of a gun are two separate and distinct offenses for which defendant may be prosecuted.").

offense] definition." *Salem v. Holder*, 647 F.3d 111, 119–20 (4th Cir. 2011) (emphasis omitted).

The Supreme Court recently considered this burden in *Pereida*. Pereida contended that he was eligible for cancellation of removal because his ambiguous Nebraska conviction for attempted criminal impersonation did not equate to a crime of moral turpitude, which would have disqualified him from relief. However, applying the modified categorical approach to the divisible Nebraska statute, the Court remarked that three of the four offenses enumerated in that statute constituted crimes of moral turpitude, "[s]o that left Mr. Pereida with the burden of proving as a factual matter that *his* conviction was for [that remaining offense]." *Pereida*, 141 S. Ct. at 763. This, he failed to do: "Before the immigration judge, he refused to produce any evidence about his crime of conviction," and he did not otherwise request "a remand for another chance to resolve the ambiguity by introducing evidence about his crime of conviction." *Id.*

The Court emphasized the burden was on Pereida to establish eligibility for cancellation of removal: "[W]hatever degree of ambiguity remain[ed] about the nature of Mr. Pereida's conviction, and whatever the reason for it, one thing remain[ed] stubbornly evident: He ha[d] not carried his burden of showing that he was not convicted of a crime of moral turpitude." *Id.* at 763. The Court thus held, "[W]here, as here, the alien bears the burden of proof and was convicted under a divisible statute containing some crimes that qualify as crimes of moral turpitude, the alien must prove that his actual, historical offense of conviction isn't among them." *Id.*

12

Applying the modified categorical approach to the divisible statute here, Rangel bore the burden of proving that his conviction under section 46.02 was for unlawful carrying of an illegal knife or club, not a handgun, so as to avoid disqualification from relief on the basis of a firearm offense. On this record, he fails to meet his burden because he did not prove—in a manner consistent with *Pereida*—that his conviction was for unlawful carrying of an illegal knife or club. In fact, the record reflects that he was convicted of unlawfully carrying a handgun, *see* A.R. 93 (noting conviction of "UCW Handgun"), which constitutes a firearm offense under 8 U.S.C. § 1227(a)(2)(C). We therefore conclude—as the IJ and the BIA did—that Rangel is ineligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(C).

IV.

For these reasons, the petition for review is

*DENIED.*

13