RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0125p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JOHN DOE,

>
> *Plaintiff-Appellee*,

*v.*

WILLIAM BYRON LEE, Governor of the State of
Tennessee, in his official capacity; DAVID B. RAUSCH,
Director of the Tennessee Bureau of Investigation, in
his official capacity,

> *Defendants-Appellants*.

No. 24-6020

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:23-cv-01332—Waverly D. Crenshaw, Jr., District Judge.

Decided and Filed: May 12, 2025

Before: CLAY, THAPAR, and READLER, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Gabriel Krimm, Matthew Dowty, Taylor Davidson, OFFICE OF THE
TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellants. Kyle
Mothershead, Brian Daniel Mounce, RELENTLESS ADVOCACY, PLLC, Brentwood,
Tennessee, for Appellee.

_____

## OPINION

_____

THAPAR, Circuit Judge. The district court below issued a preliminary injunction barring
certain Tennessee officials from enforcing any of the state's sex-offender statutes. After an
intervening Sixth Circuit decision called that relief into question, the Tennessee officials asked

the district court to dissolve or modify the preliminary injunction.  But the district court refused. Instead, it ordered the case administratively closed and dismissed the officials' motion without prejudice.  Because that's an appealable order, and because the district court abused its discretion in refusing to dissolve or modify the preliminary injunction, we reverse.

I.

Tennessee has long required individuals convicted of sex offenses to register with the Tennessee Bureau of Investigation and comply with other reporting requirements and restrictions.  The state first implemented this system in 1994, when it passed a registration and reporting statute and disseminated certain information about convicted sex offenders to the public.  Tennessee wasn't alone in enacting such a regulatory scheme.  That same year, Congress passed a law requiring states to adopt sex-offender registration laws if they wanted to receive federal law-enforcement funding.  *See* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 170101, 108 Stat. 1796, 2038–42 (1994).  Within two years, every state, the District of Columbia, and the federal government had enacted some form of sex-offender registration statute.  *See Smith v. Doe*, 538 U.S. 84, 89–90 (2003).  This coordinated regulatory regime was meant to give the public information about sex offenders and limit offenders' access to potential victims.  In 2004, Tennessee passed a new version of its sex-offender regime and has amended it several times since.

In brief, the Tennessee sex-offender statutes do three main things:  (1) they require offenders to appear in person quarterly and to update their personal information; (2) they limit where offenders can live, work, and move; and (3) they allow the state to publish information about registrants.  *See Doe v. Lee*, 102 F.4th 330, 334 (6th Cir. 2024) ("*Does #1–9*").

Plaintiff John Doe, meanwhile, is a convicted sex offender who committed his offenses before the passage of the 2004 statutes.  Because Tennessee imposes the requirements on Doe, he argues that the requirements are a retroactive punishment in violation of the Constitution's Ex Post Facto Clause.  *See* U.S. Const. art. I, § 10, cl. 1.  So, he sued to stop Tennessee Governor William Lee and Tennessee Bureau of Investigation Director David Rausch from enforcing the statutes against him.

In a related case, a district court had already issued an injunction for nine other convicted sex-offenders against these same defendants.  That case was pending before the Sixth Circuit when Doe filed this suit.  *See Does #1–9*, 102 F.4th at 342.  Thus, neither the governor nor the director objected to Doe's request for an injunction.  So, the district court entered an injunction prohibiting them from enforcing the sex-offender laws.

Before the injunction was entered, the parties jointly moved to administratively stay the case until this court ruled on *Does #1–9*.  After issuing the injunction, the district court granted the motion to stay the case.

Soon after, the Sixth Circuit handed down *Does #1–9*.  First, the court held that the plaintiffs lacked standing to sue Governor Lee.  *Id.* at 336.  Second, the Sixth Circuit directed the trial court to modify its injunction against Director Rausch.  *Id.* at 342.  The Sixth Circuit held that, in issuing the sweeping injunction, the district court had "misread" our analogous precedent relating to a Michigan law, which invalidated only two amendments to Michigan's scheme, not the whole framework.  *Id.* at 340; *see also Does #1–5 v. Snyder*, 834 F.3d 696, 706 (6th Cir. 2016).  Thus, the Sixth Circuit explained that *Snyder* didn't authorize the district court here to enjoin Director Rausch from enforcing Tennessee's *entire* sex-offender registry.  *Does #1–9*, 102 F.4th at 338–39.  And it said that much of Tennessee's sex-offender regime posed no problem. *Id.* at 341.  So, at most, the plaintiffs could obtain an injunction against the enforcement of those provisions of Tennessee's regime that were analogous to the provisions of Michigan's regime that *Snyder* invalidated.  *Id.* at 341–42.  The court remanded so that the parties could determine which Tennessee provisions were like the problematic amendments in *Snyder* and clarify what provisions the director actually enforced.  *Id.* at 342.  That way, an injunction against the director would redress the plaintiffs' injuries.  That case is pending before that district court now.

Following *Does #1–9*, the district court re-opened this case.  Governor Lee and Director Rausch then moved to dissolve the district court's preliminary injunction.  They argued that it was too broad, since it had enjoined the entire Tennessee scheme—something *Does #1–9* said was erroneous.  In the alternative, they asked the district court to "narrowly tailor" any remaining preliminary relief.  R. 31, Pg. ID 169.  Doe, for his part, asked the court to drop Governor Lee from the proceedings and stay the remaining proceedings during the *Does # 1–9* remand.

The district court agreed with Doe. Observing that the *Does #1–9* remand might "inform the disposition of this matter," the court ordered the docket "administratively closed pending final judgment" in *Does #1–9*. R. 43, Pg. ID 451. The court then "terminate[d] all pending motions without prejudice to refiling upon reopening of the case." *Id.* Once *Does #1–9* reached a "final judgment," the governor and director could refile their motion to dissolve the preliminary injunction. *Id.*

Governor Lee and Director Rausch appealed.

## II.

The federal judicial power extends to cases in equity. U.S. Const. art. III, § 2, cl. 1. The power to enjoin parties is an awesome one, but it's also "meaningfully constrained." *Trump v. Hawaii*, 585 U.S. 667, 716 (2018) (Thomas, J., concurring). Since the Founding, the Anti-Federalists feared that it would be "very dangerous" to vest judges with the combined power of legal and equitable relief. Letter No. 3 (Oct. 10, 1787), *reprinted in* 2 *The Complete Anti-Federalist* 234, 244 (Storing ed., 1981). Operating outside the strict confines of the law, judges could "step into [the] shoes of equity, and give what judgment [their] reason or opinion may dictate." *Id.* The Federalists understood this concern and responded that "[t]he great and primary use of a court of equity is to give relief *in extraordinary cases*, which are *exceptions* to general rules." *The Federalist* No. 83, at 473 (Alexander Hamilton) (Clinton Rossiter ed., 1961) (emphases in original). Justice Joseph Story agreed. He observed that injunctive relief is "attended with no small danger, both from its summary nature and its liability to abuse." 2 *Commentaries on Equity Jurisprudence: As Administered in England and America* § 959(b), at 303 (6th ed. 1853). He advised that courts ought to "guard[]" it with "extreme caution," and apply it "only in very clear cases." *Id.* Otherwise, equitable relief risked becoming a "means of extensive, and perhaps, of irreparable injustice." *Id.* For these reasons, law, tradition, and precedent have kept the preliminary injunction a tightly guarded remedy. *See Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 198–200 (3d Cir. 2024).

Congress recognized the strength of the injunction. Thus, it granted parties immediate review of district court orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1).

A.

Thus, the first question we must answer is whether we have authority to review the district court's administrative closure of the docket. In effect, does that administrative closure, plus the court's dismissal without prejudice of appellants' motion, count as an order "refusing to dissolve or modify" an injunction?

When deciding whether a district court order falls within our power to review interlocutory decisions, we focus on the order's nature and substance, not on what the district court called it. *Cooey v. Strickland*, 588 F.3d 921, 922–23 (6th Cir. 2009) (per curiam). Otherwise, a district court could prevent review simply by labeling its order a certain way. *Abbott v. Perez*, 585 U.S. 579, 595 (2018); *see also* 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2962 (3d ed. 2002) (hereinafter Wright & Miller).

To determine when an order—no matter how it's labeled—is appealable, the Supreme Court has set out the following test. To be appealable, the district court's action must: (1) have the "practical effect" of granting or denying an injunction, (2) have "serious, perhaps irreparable, consequence[s]" for a party, and (3) be "effectually challenged" only by immediate appeal. *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (citation omitted).[1]

Here, the district court's order (1) has the practical effect of refusing to dissolve an injunction, (2) has serious, irreparable consequences, and (3) can be effectually challenged only by immediate appeal. Thus, it is appealable.

---

[1]It's unclear why a litigant must show the latter two prongs once he can establish that the district court's action has the "practical effect" of an injunction. *Carson* seems to have added the irreparable-consequence and immediate-review requirements because § 1292(a)(1) "was intended to carve out only a limited exception to the final-judgment rule." 450 U.S. at 84. But since Congress made ordinary injunctions appealable through § 1292, there's no reason to treat orders that act like an injunction differently than regular injunctions.

1.

While styled as a docket-management tool, the district court's order had the "practical effect" of refusing to dissolve an injunction. *Abbott*, 585 U.S. at 594–95. How do we know when an order has that effect? Asking the following simple question will typically suffice: is the request for injunctive relief still pending before the district court? If so, then it's not appealable. But if no motion is pending, then the court's order has the "practical effect" of providing injunctive relief. *See In re Nat'l Prescription Opiate Litig.*, No. 19-3398, 2019 WL 13493113, at *3 (6th Cir. Nov. 18, 2019) (Thapar, J., dissenting).

This rule makes sense. Courts can't disguise orders that are "injunctive in nature and in effect" by cloaking them in the garb of docket-management. *Cooey*, 588 F.3d at 923. Otherwise, a party would never have the opportunity for direct appellate review. Instead, the party would have to seek mandamus, which is "no easy road." *In re Nat'l Prescription Opiate Litig.*, 2019 WL 13493113, at *3 (Thapar, J., dissenting). So, we need a test for determining when a docket management order has the "practical effect" of an injunctive order. It usually depends on whether the party's motion is still pending. *See* Wright & Miller, *supra*, at § 3924.2.

Here, Tennessee's motion is no longer pending; the district court dismissed it without prejudice. Once a district court has terminated a motion to dissolve an injunction—as the court did here—that amounts to a refusal to dissolve the injunction. The order here therefore falls within the class of interlocutory orders that are appealable.

Indeed, this posture is a lot like *Cooey*, where we held that we could review a similar district court order. 588 F.3d at 922. There, the district court stayed the defendant's execution based on separate litigation challenging Ohio's execution protocol. *Id.* But Ohio changed its execution protocol. So, the government moved to vacate the court's stay of the execution, arguing that the new protocol mooted the earlier order. *Id.* The district court refused. *Id.* Ohio appealed, and we had jurisdiction because the lower court's order was "injunctive in nature and in effect." *Id.* at 923. Here, an intervening case—*Does #1–9*—undermined the foundation of the district court's preliminary injunction. But the district court refused to dissolve or modify its

injunction, just like the district court in *Cooey*.  In both cases, the courts' orders had the practical effect of an injunction.

2.

Next, the officials must show that the district court's order "might have a 'serious, perhaps irreparable, consequence.'" *Carson*, 450 U.S. at 84 (citation omitted).

They meet that burden here.  A district court's preliminary injunction has irreparable consequences anytime a court enjoins duly enacted statutes.  *Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020).  And appellants articulate an "ongoing and concrete harm to [Tennessee's] law enforcement and public safety interests."  *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers); *see also Abbott*, 585 U.S. at 602 n.17 (same).  They point to the reason for enacting the sex-offender registry in the first place:  "[s]exual offenders pose a high risk of engaging in further offenses," so Tennessee sought to ensure that the public had the necessary information "to adequately protect themselves and their children from these persons."  Tenn. Code Ann. §§ 40-39-201(b)(1)–(2) (2025).  Thus, the fact that Tennessee "may not employ a duly enacted statute to help prevent these injuries constitutes irreparable harm." *King*, 567 U.S. at 1303.

In response, Doe says that the sex-offender scheme isn't necessary to public safety.  But a court can't second-guess Tennessee's judgment that the statute is necessary to prevent sex-offender recidivism and protect the public.  That's a policy judgment reserved for the Tennessee legislature.  In any event, appellants have shown that Tennessee's sex-offender statute promotes the public safety and combats recidivism.

Further, Doe points out that he's been off the registry for over a year, and nothing bad has happened.  But Tennessee isn't required to wait until a sex offender recidivates before it can enforce its laws.  The whole point of a sex-offender registry is to prevent recidivism through tracking and disclosure requirements.  *See Smith*, 538 U.S. at 103.

3.

Finally, only an immediate appeal can protect appellants' interest in enforcing Tennessee law. *See Abbott*, 585 U.S. at 602–03. Otherwise, the district court's docket will remain closed until the end of the remand in *Does #1–9*. Thus, absent immediate appeal, Tennessee cannot "effectually challenge" the district court's order. *Carson*, 450 U.S. at 84 (citation omitted).

\* \* \*

In sum, we have jurisdiction over the district court's order refusing to rule on appellants' motion to dissolve the preliminary injunction and administratively closing the docket.

B.

There is, however, one more jurisdiction-related prerequisite to address. Not every request to modify or dissolve an injunction is appealable. Rather, according to Sixth Circuit precedent, to "obtain modification or dissolution of an injunction, a movant must demonstrate significant 'changes in fact, law, or circumstances since the previous ruling.'" *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012) (citation omitted). Otherwise, a litigant could cast an unappealable motion for reconsideration as a motion to dissolve an injunction and enjoy immediate appeal. *Id.* at 415.

But what counts as an intervening change in law? Does it require an overturned precedent? A statutory change? Or something less stark, like doctrinal changes? The Supreme Court provided an answer in *Agostini v. Felton*. 521 U.S. 203 (1997). There, New York City sought relief from an injunction, arguing that the underlying jurisprudence had shifted. *Id.* at 214–15. The Court agreed with the City: "subsequent changes in either statutory or decisional law" justify the modification of equitable relief, and a court "errs when it refuses to modify an injunction or consent decree in light of such changes." *Id.* at 215. Thus, *Agostini* illustrates that a court may abuse its discretion if it refuses to dissolve or modify an injunction in light of changing caselaw.

Our circuit confirmed as much in *Sweeton v. Brown*. 27 F.3d 1162 (6th Cir. 1994) (en banc). In that case, the en banc court recounted a history of "considerable confusion" about a

question of constitutional law. *Id.* at 1164. But after an on-point Supreme Court holding, "it became clear" that the "legal theory and analysis upon which the consent decree was formulated was erroneous." *Id.* So, the intervening legal change meant that the court had power to modify the ongoing relief. As the court put it, "[t]he foundation upon which the claim for injunctive relief was built ha[d] crumbled." *Id.* at 1166; *see also Doe v. Briley*, 562 F.3d 777, 783–84 (6th Cir. 2009); *California by & through Becerra v. EPA*, 978 F.3d 708, 711 (9th Cir. 2020).

That logic applies in full force to the effect of *Does #1–9* on the district court's preliminary injunction. Tennessee district courts like the one below relied on *Snyder* to enjoin the wholesale enforcement of Tennessee's sex-offender statutes. But these courts were "misread[ing]" *Snyder*: that case had only invalidated two amendments to Michigan's sex-offender scheme. *Does #1–9*, 102 F.4th at 340. So, after *Does #1–9*, "it became clear" that the district courts had been "confus[ed]." *Sweeton*, 27 F.3d at 1164. Thus, an intervening opinion from a higher court caused the "foundation" of the district court's injunction to "crumble[]." *Id.* at 1166.

All's to say, appellants are right to argue that *Does #1–9* changed the law. Their motion to dissolve the preliminary injunction is therefore properly before us.

III.

As to the merits, *Does #1–9* compels the reversal of the district court's order to administratively close the docket and remand for proceedings consistent with that opinion.

The preliminary injunction here and the injunction in *Does #1–9* are materially identical: they prohibit Governor Lee and Director Rausch from enforcing Tennessee's sex-offender statutes. *Compare Does # 1–9*, 102 F.4th at 332, *with* R. 17, Pg. ID 72. And the *Does #1–9* panel held that such relief was improper against both the governor and the director. As to the governor, the court ordered the injunction dissolved because the governor played no enforcement role in Tennessee's sex-offender scheme. *Does #1–9*, 102 F.4th at 336. And as to the director, the court held that most of what the director enforces *is* constitutional. *Id.* at 341. The court then remanded for the district court to determine which specific unconstitutional provisions, if any,

the director enforces and to modify the injunction against him accordingly.  *Id.* at 341–42.  Those holdings are directly on-point to this appeal.

Doe, for his part, advances two new legal theories to try to circumvent the holdings in *Does #1–9*.  Neither is availing.

*Civil conspiracy*.  First, Doe claims that Director Rausch is part of a civil conspiracy to violate his constitutional rights.  Doe alleges that Director Rausch, along with Tennessee's other law enforcement agencies, "share[s] a plan" to violate Doe's rights.  Appellee Br. at 31.

This claim fails, for two reasons.  First, the intracorporate conspiracy doctrine precludes it.  Under that doctrine, "individuals acting in their capacities as employees of the same entity . . . cannot conspire with each other."  *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 887 (6th Cir. 2024) (citation omitted).  Thus, Doe must show an agreement between Director Rausch and someone who isn't a state officer.  *Id.*  He hasn't.  And Doe has provided only conclusory allegations of a conspiracy, which he plans to flesh out "with the benefit of discovery."  Appellee Br. at 30.  Such bare allegations, however, don't amount to the necessary "clear showing" for preliminary relief.  *See Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 539 (6th Cir. 2020) (citation omitted).  Thus, this argument falls short.

*Due Process*.  Doe's other fallback argument is that, if he were to re-register as a sex offender, the remand in *Does #1–9* would "impose a hopeless level of ambiguity with regard to what he can or cannot do."  Appellee Br. at 37.  In *Does #1–9*, we instructed the district court on remand to figure out which portions of Tennessee's sex-offender statutes flouted the Ex Post Facto Clause.  So, Doe argues, until that case reaches final decision, he doesn't know which provisions appellants can enforce against him.

But this argument is mooted by remanding with instructions to modify the injunction consistent with *Does #1–9*.  As the district court adjusts the injunction, Doe will know which provisions the director may or may not enforce.

In sum, the holdings in *Does #1–9* control this case. *Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019) (emphasizing that "a published panel opinion binds all later panels"); *see also* 6 Cir. R. 32.1(b). Thus, *Does #1–9* mandates reversing the district court's administrative-closure order and remanding with instructions to modify the injunction consistent with that case.[2]

\* \* \*

Almost two hundred years ago, Justice Story articulated the benefits and costs of equitable relief: by preventing irreparable harm, an injunction can often be "manifestly indispensable for the purposes of social justice." Story, *supra*, at 303. But if deployed with too heavy a hand, the injunction risks becoming a means of "extensive, and perhaps, of irreparable injustice." *Id.* Here, the district court's refusal to dissolve or modify the preliminary injunction perpetuated one such "irreparable injustice." It prevented Tennessee from enforcing important—and constitutional—regulations to protect society's most vulnerable. So, we reverse the district court's order administratively closing the case and remand for proceedings consistent with *Does #1–9* and this opinion.

---

[2]Appellants, for their part, seek vacatur of all preliminary relief because Director Rausch allegedly plays no role in enforcing the unconstitutional portions of Tennessee's sex-offender statutes. But we decline to address that fact-bound argument here, since the district court hasn't passed on it. After all, we are "a court of review, not of first view." *Byrd v. Haas*, 17 F.4th 692, 700 (6th Cir. 2021) (citation omitted). The director presented those arguments to the district court before the administrative-closure order and may present them again on remand.