NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0099n.06

Case No. 25-3322

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>

WILLIAM POWELL COMPANY,

    Plaintiff-Appellant,

v.

OCEAN MARINE INSURANCE COMPANY
LIMITED, et al.,

    Defendants-Appellees,

GREAT AMERICAN INSURANCE COMPANY
OF NEW YORK; GREAT AMERICAN E & S
INSURANCE COMPANY; HARTFORD
ACCIDENT & INDEMNITY COMPANY;
UNITED STATES FIRE INSURANCE
COMPANY,

    Defendants/Cross-Claimants-Appellants,

AVIVA INSURANCE LIMITED,

    Defendant/Cross-Defendant-Appellee.

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

**FILED**
Feb 27, 2026
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

OPINION

</td></tr>
</table>

Before: NALBANDIAN, DAVIS, and HERMANDORFER, Circuit Judges.

HERMANDORFER, Circuit Judge. This dispute arises from longstanding insurance policies managed by a series of related and successor entities both here and abroad. Several decades ago, starting in the 1950s, the Ohio-based William Powell Company purchased numerous general-liability insurance policies from a Scottish entity called General Accident Fire and Life

Assurance Corporation, Ltd.  Now, General Accident is called Aviva Insurance Limited.  And Aviva disclaims any obligation to pay Powell under the policies—despite Powell's having tens of millions in coverage remaining.  So Powell sued Aviva, seeking damages for breach of contract and a declaratory judgment that Aviva owes coverage.  The district court granted Aviva's motion to dismiss for failure to state a claim.  For the reasons set out below, we vacate the dismissal order and remand for further proceedings.

I

A

Because this case reaches us on a motion to dismiss for failure to state a claim, we accept as true the operative complaint's well-pled factual allegations.  *See Stanley v. City of Sanford*, 606 U.S. 46, 49 (2025).  We thus summarize the facts as Powell has alleged them.

Powell is an Ohio-based industrial-valve manufacturer.  Between 1955 and 1977, Powell purchased 13 general-liability insurance policies from General Accident Fire and Life Assurance Corporation, Ltd., a Scottish entity.  General Accident issued the policies to Powell "in Ohio," where General Accident also "accept[ed] premium payments" for "more than twenty years."  Am. Compl., R.43, PageID 415.  At all relevant times, the Ohio Department of Insurance authorized General Accident to "write policies in Ohio to Ohio businesses."  *Id.* at PageID 418.

Powell could have chosen a different insurer to be responsible for the policies.  One option was United States-based Potomac Insurance Company—which at the time operated as General Accident's wholly owned subsidiary.  But Powell opted not to select Potomac as its insurer.  Nor do the policies currently in the record identify "any other United States-based entity"—such as a "United States branch" of a foreign-based insurer—as responsible for issuing the policies to

Powell. *Id.* Instead, Powell contends that Scotland-based General Accident itself issued the policies.

By 1981, General Accident apparently sought to cease operating directly in the U.S. market. To facilitate its exit, General Accident "purported to transfer its U.S. based assets to Potomac," its wholly owned U.S. subsidiary. *Id.* Potomac, for its part, "agreed to assume . . . General Accident's liabilities to Powell under the Policies." *Id.* at PageID 418-19. But General Accident "did not notify Powell of Potomac's purported assumption of the Powell liabilities under the Policies" and "never sought nor obtained Powell's consent" to assign those liabilities to Potomac. *Id.* at PageID 419.

Some two decades later, individuals began suing Powell for personal injuries allegedly sustained from asbestos exposure. Those lawsuits—some of which are still ongoing—triggered the defense and indemnification provisions of Powell's policies with General Accident. After the first lawsuits commenced in 2001, the entity formerly known as Potomac—now called Bedivere Insurance Company—"represented to Powell that it was the successor in interest to General Accident." *Id.* at PageID 420. Bedivere, through a third-party administrator, then provided defense and indemnity coverage to Powell between 2001 and 2019.

But in 2019, Bedivere stopped providing coverage. Two years later, it entered into liquidation proceedings. That left approximately $27 million in indemnification limits, and "at least double that amount" in "defense dollars," unpaid on Powell's policies. *Id.* Since Bedivere's insolvency, other insurance companies have helped cover Powell under separate policies and "pursuant to a Settlement and Allocation Agreement." *Id.* at PageID 421. But those settling insurers' coverage was only partial.

In April 2021, Powell turned back to General Accident for coverage on the policies. To support that request, Powell asserted that "each policy" in question "was issued by General Accident." Powell Tender, R.43-2, PageID 605. General Accident—now known as Aviva—denied Powell's tender. According to Aviva, it had previously offloaded its "US business," including any liability to Powell under the insurance policies. Aviva Ltr., R.43-3, PageID 636.

B

In response, Powell sued Aviva in the Southern District of Ohio in August 2021. Powell sought damages for breach of contract and a declaratory judgment that Aviva owes defense and indemnity coverage under the policies.[1]

Aviva moved to dismiss Powell's amended complaint for lack of personal jurisdiction and for failure to state a claim. Aviva denied Powell's allegation that General Accident issued the policies directly to Powell in Ohio. Citing outside-the-complaint evidence, Aviva instead asserted that it was General Accident's New York-based U.S. branch that issued the policies. And under New York law, Aviva maintained, a U.S. branch—even though not formally a distinct legal entity—operates separately from the foreign-based insurer that established it.

On Aviva's understanding of New York law, any liability related to Powell's policies thus belonged only to General Accident's U.S. branch. That meant Powell, despite selecting Scotland-based General Accident as the issuer of its policies, never had any contractual relationship with General Accident. Alternatively, Aviva argued that even if the U.S. branch's liabilities initially extended to General Accident, General Accident extinguished them through its 1981 transaction

---

[1] Powell also sued the settling insurers as "nominal defendants only so they may assert their interests." Am. Compl., R.43, PageID 421. Each of the settling insurers have asserted crossclaims against Aviva, seeking equitable subrogation (or equitable contribution in the alternative) and a declaratory judgment.

with Potomac—known in New York law as a domestication agreement. *See* N.Y. Ins. Laws §§ 7201-7205.

Aviva proffered with its dismissal motion an unsigned copy of the domestication agreement between General Accident and Potomac. Aviva later moved to supplement the record to include a fully executed and notarized version of the domestication agreement; the magistrate judge granted that request over Powell's objection. At the same time, the magistrate judge denied Powell's motion to compel discovery, including that related to the circumstances surrounding the domestication agreement.

Ultimately, Aviva's motion to dismiss was referred to the magistrate judge for a report and recommendation. The magistrate judge recommended rejecting Aviva's personal-jurisdiction and merits arguments and denying dismissal. Aviva objected. The district court sustained Aviva's objections and dismissed Powell's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. It did not reach Aviva's personal-jurisdiction arguments.

In granting dismissal, the district court employed a two-part analysis. *First*, the district court rejected Powell's allegation that General Accident had issued the policies directly to Powell in Ohio. The district court acknowledged that the "name of the insurer listed on [Powell's] policies is General Accident Fire and Life Assurance Corporation, Limited." Order, R.122, PageID 2118. But it concluded that New York law—which it assumed governed all U.S. operations of General Accident—rendered that fact irrelevant. According to the district court, "when foreign insurers do business in the United States under the New York Insurance Law, their domestic operations are conducted and regulated separately to some degree." *Id.* at PageID 2121. So "[w]hatever the language of the policy," New York law "in fact requires a layer of separation—it requires that the foreign insurer conduct its domestic business largely as a complete and separate organization." *Id.*

- 5 -

(citation modified). Thus, "[u]nder the relevant statutory scheme," when "Powell placed the insurance policies at issue with General Accident, it placed them with General Accident's U.S. branch." *Id.* at PageID 2123. The district court did not address Powell's allegations that General Accident itself had "legal authority to do business in Ohio" under a policy-writing authorization from the Ohio Department of Insurance. *Id.* at 2122.

*Second*, having concluded that the policy was exclusively with General Accident's U.S. branch, the district court determined that General Accident's 1981 domestication agreement had "cut off" General Accident's liability. *Id.* at 2126. The district court reasoned that General Accident, by agreeing that Potomac would merge with and assume the liabilities of its U.S. branch, "effectively washed its hands of its U.S. operations in 1981." *Id.* at 2127. That was so even though Powell did not receive notice of the domestication agreement nor of General Accident's purported transfer of liabilities on the policies. As the district court read New York law, the domestication agreement meant "Aviva is not liable on the policies" irrespective of the traditional contract-law limits on parties' assignment rights. *Id.* It therefore concluded that Powell failed to "state[] a claim on which relief can be granted." *Id.*

Powell timely appealed. We review the district court's decision de novo. *See Peterson v. Johnson*, 87 F.4th 833, 836 (6th Cir. 2023).

II

The lengthy background of the parties' decades-old insurance transactions is complex. But at this stage, we may resolve Powell's appeal with reference to rules that generally govern motion-to-dismiss-phase practice. To start, courts must take as true the well-pled factual allegations of a complaint. And barring some exceptions not applicable here, courts are not to resolve motions to

dismiss by considering defendants' outside-the-complaint exhibits. Applying those rules, we conclude that vacatur and remand is warranted.

A

We start with the allegations regarding the parties' original contractual relationship under the policies. Our focus is on the district court's conclusion that Powell never contracted directly with General Accident.

1

Powell's complaint states a prima facie claim for breach of contract.[2] "A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018); *see also 34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022) (effectively same under New York law). Powell checks those boxes. It alleges that Aviva's predecessor, General Accident, issued several general-liability insurance policies to Powell between 1955 and 1977. It alleges that Aviva has now disregarded its continued payment obligation under those policies to Powell's detriment. And it alleges that Aviva did so despite Powell having "performed all its duties under the [p]olicies." Am. Compl., R.43, PageID 421. Powell also alleges that only General Accident—not any other entity—agreed to insure Powell. On its face, then, Powell's breach claim would seem primed to proceed past the motion-to-dismiss stage.

---

[2] This is true under both the law of Ohio (where the parties allegedly executed the policies) and New York (which the district court thought governed the operations of the U.S. branch). In its motion to dismiss, Aviva accepted that "Ohio law applies" because Powell's contract "was presumably executed in Ohio, and the alleged breach arose in Ohio." Mot. to Dismiss, R.56, PageID 762 n.15 (citation omitted). Yet at the same time, Aviva contended that New York insurance law governed the U.S.-based operations of General Accident. As noted below, we leave any remaining choice-of-law questions for remand in light of our analysis.

The district court nonetheless concluded that Scotland-based General Accident did not actually issue the policies. Instead, it determined that General Accident's New York-based U.S. branch—a quasi-independent entity, according to the district court—was Powell's counterparty. Powell, the district court highlighted, did not "contest that General Accident did business in the United States . . . through its U.S. branch." Order, R.122, PageID 2123. And under the district court's interpretation of New York law, General Accident extinguished any liability that flowed from the U.S. branch when it executed the domestication agreement with Potomac.

That analysis conflicts with the Rule 12(b)(6) standard, which required the district court to grant Powell the benefit of all factual allegations and reasonable inferences. *See Meriwether v. Hartop*, 992 F.3d 492, 498 (6th Cir. 2021). Contrary to Powell's assertion that General Accident's U.S. branch specifically *did not* issue the policies, the district court determined that the U.S. branch *did* issue the policies. That conclusion ran against Powell's factual allegations and the plain language of the insurance policies, which identified only "General Accident Fire and Life Assurance Corporation, Ltd." as Powell's insurer. *See, e.g.*, Insurance Policies, R.43-1, PageID 461.

Contra the district court's reasoning, that Powell conceded the *existence of* General Accident's New York-based U.S. branch does not amount to an admission that Powell *contracted with* the U.S. branch. Indeed, Powell's district court briefs maintained that General Accident "issued the Policies to Powell . . . in Ohio." Mot. to Dismiss Opp'n, R.64, PageID 899; *see also* Resp. to Objs., R.120, PageID 2083. And Powell alleged that General Accident could do so directly under Ohio insurance regulation. So nothing in Powell's pleadings permitted adopting Aviva's assertion that the U.S. branch issued the policies.

2

In response, Aviva principally defends the district court as having reached a permissible legal conclusion. According to Aviva, the district court correctly applied New York insurance statutes and caselaw in concluding that the U.S. branch—not General Accident—necessarily issued the policies to Powell. The district court, Aviva continues, thus resolved the who-issued-the-policies question on proper legal grounds, not factual ones. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

That law-only account is flawed. The question whether General Accident or its U.S. branch issued the policies is not a question of law; it necessarily reduces to whether a contract ever existed between Powell and General Accident. Aviva's position, after all, is that it "did not enter into a single insurance contract with Powell." Aviva Br. 27-28. But it's "generally a question of fact for the jury whether or not a contract . . . actually exists" between two parties. *Pereida v. Wilkinson*, 592 U.S. 224, 239 n.6 (2021) (quoting 11 R. Lord, Williston on Contracts § 30:3, pp. 37-39 (4th ed. 2012)). That's true under both Ohio and New York law. *See Oglebay Norton Co. v. Armco, Inc.*, 556 N.E.2d 515, 519 (Ohio 1990); *Appliance Assocs., Inc. v. Dyce-Lymen Sprinkler Co.*, 123 A.D.2d 512, 513 (N.Y. App. Div. 1986). And "a question of fact" is "improper to resolve at the motion-to-dismiss stage." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 705 (6th Cir. 2022).

Further, Aviva's fact-law divide does not necessarily follow on its own terms. It could be that New York law generally contemplates that alien insurers will contract through their U.S. branches. But any such default rule would not answer whether General Accident in fact contracted through its U.S. branch with Powell in Ohio, or else deviated and signed a policy directly in Powell's case. Nor, as Powell notes, does it address potential insurance- and contract-law fallout from General Accident's conduct or representations to Powell in signing the original agreements.

That is not to say that the question whether Powell contracted with General Accident or its U.S. branch does not carry potential legal ramifications. If Powell contracted directly with General Accident in Ohio, as Powell alleges, that might give rise to additional questions over the applicable state law. *Cf. Ohayon v. Safeco Ins. Co. of Ill.*, 747 N.E.2d 206, 209-12 (Ohio 2001) (discussing Ohio choice-of-law rules in contract cases).[3] So proper factual resolution of Powell's counterparty to the policies will help ensure that issues under state law are addressed as necessary to resolve the parties' contractual dispute.

It might be that, in the end, New York law governs and resolves this dispute in the way the district court contemplated. But, on the record as it stands, dismissal could not rest on rejecting Powell's allegations that it contracted directly with General Accident in Ohio.

B

We next turn to the district court's conclusion that General Accident extinguished its liability under Powell's policies when it executed a domestication agreement with Potomac pursuant to New York law. That conclusion, as the district court acknowledged, followed from its premise that Powell's liabilities were exclusively placed with General Accident's U.S. branch, not General Accident itself. For reasons just given, accepting that premise was error—at least at this procedural juncture. So the district court's domestication holding likewise cannot sustain dismissal.

---

[3] For instance: What was the relevant law on policy issuers in Ohio between 1955 and 1977, when General Accident allegedly issued the policies to Powell? Could, as Powell alleges, General Accident contract directly with Ohio companies from its home base in Perth, Scotland? Or did Ohio law require General Accident to contract with Ohio companies through a U.S. branch? If so, did it have to be an Ohio-based branch? If General Accident could issue policies to Ohio companies through its New York-based U.S. branch, did New York insurance law simply displace Ohio insurance law for all relevant purposes? Did General Accident disregard any obligations it had under New York law and purport to contract with Powell directly? If so, what would be the effect of any such fact on the parties' contractual obligations? On remand, the parties would do well to consider and address those or other applicable choice-of-law considerations.

But we focus below on a different procedural misstep: Because the domestication agreement was an outside-the-complaint exhibit, the district court should not have granted it case-dispositive import in dismissing Powell's claims under Rule 12(b)(6).

1

The Federal Rules of Civil Procedure limit the material that courts may consider in deciding a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(d). A district court "should typically limit itself to the well-pleaded allegations within the complaint's four corners," *Blackwell v. Nocerini*, 123 F.4th 479, 486 (6th Cir. 2024), and "exhibits attached to the complaint," *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). If a defendant supports its motion to dismiss with exhibits—such as General Accident's domestication agreement—a district court "may exclude the evidence and evaluate the complaint under the standards in Civil Rule 12(b)(6)." *Blackwell*, 123 F.4th at 486. Or it may choose to "consider the evidence and treat the motion as one for summary judgment under Civil Rule 56." *Id.*

We have recognized several exceptions to those general rules. Relevant here, a court may consider an outside-the-complaint exhibit in connection with a Rule 12(b)(6) motion "if [the] complaint refers to the exhibit and if the plaintiff's claim depends on it." *Id.* at 487. In other words, the exhibit must be "central to the claims contained" in the complaint. *Diei v. Boyd*, 116 F.4th 637, 643 (6th Cir. 2024) (citation omitted).

We agree with Powell that its breach-of-contract claim against Aviva does not depend on the domestication agreement. Boiled down, Powell's contract theory goes as follows: General Accident issued numerous general-liability insurance policies to Powell between 1955 and 1977; later lawsuits triggered the defense and indemnification provisions of the policies; but General Accident's successor, Aviva, failed to provide the coverage it promised to Powell, causing Powell

- 11 -

damages. That claim, as alleged, "does not depend on" the effect of a separate General Accident-Potomac agreement, which Powell was unaware of and did not consent to. *Blackwell*, 123 F.4th at 487. Powell bases its claim solely on the terms of the insurance policies and Aviva's failure to adhere to them—nothing more.

True, the complaint notes in a two-paragraph span that, in 1981, General Accident "purported to transfer its U.S. based assets to Potomac." Am. Compl., R.43, PageID 418. And through that "purported" transaction, Potomac "agreed to assume certain of General Accident's liabilities, including General Accident's liabilities to Powell under the Policies." *Id.* at PageID 418-19. Aviva views those allegations—substantiated by its extra-complaint domestication agreement—as its way out: In its view, domestication relieved any original duty to Powell under the policies. But that just makes the domestication agreement "central" to *Aviva's* "*defense.*" *Blackwell*, 123 F.4th at 487. Aviva's legal theory does not render the domestication agreement "central" to *Powell's claim. Id.* Because the domestication agreement falls short of the "central-to-the-claim exception to our normal motion-to-dismiss framework," the district court erred in considering it. *Id.* (citation modified).

No matter, says Aviva. Even if we can't consider the actual domestication agreement, a notice in the Federal Register reflects the existence of an agreement between General Accident and Potomac, a Pennsylvania corporation. The notice states that "General Accident Fire & Life Assurance Corporation, Limited, Perth, Scotland, a U.S. Branch, . . . domesticated and merged into Potomac Insurance Company, effective December 31, 1981." 47 Fed. Reg. 36,747, 36,747 (Aug. 23, 1982). It further provides that the "surviving corporation, Potomac Insurance Company has acquired the assets and assumed the liabilities of the merged corporation." *Id.* And Congress

has mandated that "[t]he contents of the Federal Register shall be judicially noticed." 44 U.S.C. § 1507.

No one can quibble with Congress's directive. Yet judicial notice makes no difference here. The Federal Register shows merely that General Accident and Potomac executed a domestication agreement involving the U.S. branch. It doesn't reveal the details. Although the notice indicates that Potomac was incorporated in Pennsylvania and that the surviving corporation will also be incorporated in Pennsylvania, we don't know which state's statutory scheme governs the domestication agreement.[4] We don't know if the domestication agreement specifically addresses Powell's policies. And so we don't know how the agreement ultimately affects Powell's claim.

And even if the U.S. branch did issue the policies to Powell, we still don't know how domestication under the laws of other states interacts with Ohio law, if at all. Did Ohio law, in 1981, have any bearing on the decision of the New York Superintendent of Insurance to—in the district court's view—authorize the replacement of an Ohio-based company's asset-laden insurer with a less-resourced insurer without giving the Ohio company any say in the matter? The Federal Register notice leaves more questions than answers. So we reject Aviva's invitation to affirm on that alternative ground.

2

Alternatively, to the extent the district court wished to consider the domestication agreement, the proper pathway was treating Aviva's motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Blackwell*, 123 F.4th at 486. Had the district court taken that course, Powell

---

[4] Pennsylvania law also provides for the domestication of alien insurers into stateside insurers. *See* 40 Pa. Stat. and Cons. Stat. Ann. §§ 491.1-491.5.

would have been entitled to "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Powell could have pressed its need for discovery into the domestication agreement's background, General Accident's and Potomac's understanding of the agreement's scope, other documents related to the domestication agreement, and any additional proceedings or conditions imposed as part of the domestication process by relevant regulators. Instead, Powell's pending discovery motions were denied on the idea that the district court "should be able to dispose of the threshold issues purely on legal grounds." Disc. Order, R.109, PageID 1926.

That process resulted in Rule 12 dismissal based on a one-sided factual record that Aviva curated. Aviva was permitted to rest on an agreement with an unclear scope, that was unknown to Powell, and that contains no indication on its face that General Accident's preexisting liabilities, as opposed to merely the U.S. branch's, would be extinguished—whether under New York law or Ohio law. Powell, which had intended to pursue a breach-of-contract theory based on events in Ohio, was left to argue against the application of New York insurance law based on an agreement that does not mention Powell or Powell's contractual rights and of which Powell was apparently unaware until the litigation.

Again, it might be that the domestication agreement is dispositive in the end. But motion-to-dismiss rules precluded the district court from reaching that conclusion at the case's outset, against Powell's well-pled factual allegations and without adequate justification for assigning the agreement case-ending force at this stage.[5]

---

[5] Aviva also argues that the district court lacked personal jurisdiction and requests that we affirm on that ground. But the district court did not pass on that argument. And because we are "a court of review, not of first view," we decline to address it. *Doe v. Lee*, 137 F.4th 569, 579 n.2 (6th Cir. 2025) (citation omitted). On remand, if Aviva chooses to pursue its personal-jurisdiction argument, the district court should address it in the first instance. *See Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 888-89 (6th Cir. 2023).

\*　　\*　　\*

We vacate and remand for further proceedings.